In re CHARLES EDWARD HUBBARD.

(Filed 14 October, 1931.)

1. **Extradition B a—Where crime is charged, asylum state should deliver the fugitive regardless of the nature of the crime or policy of the law.**

   Under the provisions of the Constitution of the United States, Art. IV, sec. 2, relating to extradition of fugitives from justice, the right to demand implies the correlative obligation to deliver the fugitive without regard to the nature of the crime or the policy of the law of the demanding state.

2. **Extradition A b—Congress has provided procedure for extradition.**

   While there is no·express grant to Congress by Art. IV, sec. 2, of the Constitution of the United States relating to extradition between the states of fugitives from justice, the duty devolves upon the legislative branch of providing by law for regulations necessary to carry the constitutional provisions into execution, in pursuance of which Congress enacted U. S. C. A., sec. 662, under which the executive of the demanding state issues extradition papers to the executive of the asylum state.

3. **Extradition B c—Validity of requisition may be challenged by writ of habeas corpus issuing from state court.**

   Where the executive authority of one state demands any person, as a fugitive from justice, of the executive authority of another state, the requisition may be challenged by a writ of *habeas corpus* issuing from a state court, Congress having failed to invest the judicial tribunals of the United States with exclusive jurisdiction in respect thereto.

4. **Extradition B a—Where extradition papers fail to charge the commission of a crime when liberally construed the accused will be discharged.**

   Where extradition papers have been issued by the executive of another state to the executive of this State for the delivery of one having violated the criminal laws of the demanding state, it is necessary for the papers upon which the requisition is issued to show at least that a crime has been committed by the person against the laws of the demanding state, and where the requisition papers, construed liberally, fail to charge substantially that a crime has been committed against the laws of the demanding state the person arrested will be discharged upon the hearing of the writ of *habeas corpus* in our courts.

5. **Same—In this case requisition papers failed to substantially charge the commission of crime.**

   Where the offense charged in the extradition papers is the drawing of checks upon a bank which have been returned by the bank with notice of insufficient funds, and the statute of the demanding state makes the drawer's fraudulent intent and knowledge of the insufficiency of the funds an essential element of the crime, the failure of the extradition papers to charge these essential elements is fatal, and, upon the hearing of a writ of *habeas corpus* by our courts, the prisoner will be discharged from custody.

CERTIORARI to review a judgment of *Frizelle, J.,* refusing on a writ of *habeas corpus* to discharge the petitioner from custody; at Chambers in Beaufort County.

J. S. Smith made the following affidavit in the State of Virginia:

"State of Virginia—City of Norfolk, to wit:

This day, J. S. Smith, of 157 Bank Street, in the city of Norfolk, State of Virginia, personally appeared before me the undersigned justice of the peace in and for the city of Norfolk, State of Virginia, and who having been by me first duly sworn, made oath as follows:

I am connected with the Monticello Hotel in the capacity of house officer. On 18 September, 1930, C. E. Hubbard was a guest at the hotel where he contracted a hotel bill amounting to $74.75, and at the same time we cashed for him several checks totaling $190.00, drawn on the Farmers Bank of Belhaven, North Carolina, dated 18 September, 1930, $20.00; 19 September, 1930, $20.00; 19 September, 1930, $50.00, and on 20 September, 1930, two checks in the sum of $50.00 each, all of which said checks have been returned by the said bank for lack of sufficient funds.

On account of knowing Lieutenant Hubbard as we did we had no hesitancy in extending his credit on the promise that he had $300.00 in the aforesaid bank. Since that time we have made repeated demands for the payment of the aforesaid checks which have met with no response, and the said C. E. Hubbard has been duly notified according to the statute in such cases made and provided that the said checks were returned by the aforesaid Farmers Bank of Belhaven, North Carolina, for insufficient funds.

And further this affiant saith not.

(Signed)   J. S. Smith.

Subscribed and sworn to before me, Chas. H. Addison, a justice of the peace for the city of Norfolk and State of Virginia, this 24 July, 1931.
(Signed)   Chas. H. Addison, J. P."

Upon this affidavit Charles H. Addison issued the following warrant:

"Commonwealth of Virginia—City of Norfolk, to wit:

To any of the police officers of the city of Norfolk:

Whereas, J. S. Smith of the Monticello Hotel, No. ......., of the city of Norfolk, has this day made complaint and information on oath, before me, Chas. H. Addison, a justice of the peace of said city, that on 20 September, 1930, in said city, C. E. Hubbard, hereinafter called

accused, did unlawfully utter two worthless checks for the sum of $50.00 each, drawn on the Farmers Bank, Belhaven, N. C., and signed by C. E. Hubbard, there not being sufficient funds to pay same in full when presented, and whereas, I see good reason to believe that an offense has been committed:

These are, therefore, in the name of the Commonwealth of Virginia, to command you forthwith to apprehend and take before the police justice of said city, in the police court thereof, the body of said accused to answer said complaint, and to be further dealt with according to law:

And moreover, upon the arrest of the said accused, by virtue of this warrant, I command you in the name of the Commonwealth of Virginia, to summon to appear at the same time and place to testify as witnesses on behalf of the Commonwealth touching the matter of said complaint, the following persons:................................ ................................ and have there and then this warrant with your return thereon.

Given under my hand and seal, this 27 May, 1931.

(Signed)   Chas. H. Addison,<br>Justice of the Peace.   (Seal.)"

There were three other warrants of the same character and verbiage.

The several warrants and the affidavit upon which they were issued were certified to the Governor of Virginia, who thereupon issued a requisition demanding for the reasons therein stated the extradition of the petitioner. Acting upon this requisition the Governor of North Carolina ordered the arrest of the petitioner; and after being taken into custody the petitioner sued out a writ of *habeas corpus,* which was heard on 28 August, 1931. His Honor held that the affidavit and the warrant charged the petitioner with a violation of the criminal law of the State of Virginia of the grade of felony and that the petitioner is a fugitive from justice, and adjudged that the petitioner be held in custody to the end that he be taken to Virginia and delivered to the proper officers of the law. The petitioner applied for a *certiorari,* which was granted. Pending the hearing in this Court he is in the custody of the sheriff of Beaufort County.

*Attorney-General Brummitt and Assistant Attorney-General Seawell for the State.*

*Ward & Grimes for petitioner.*

ADAMS, J. A person charged in any state with treason, felony, or other crime, who shall flee from justice and be found in another state, shall on demand of the executive authority of the state from which he

fled be delivered up, to be removed to the state having jurisdiction of the crime. Constitution of United States, Art. IV, sec. 2. This section includes every offense punishable by the law of the state in which it was committed and gives the right to demand the fugitive; and the right to demand implies the correlative obligation to deliver the fugitive without regard to the nature of the crime or the policy or laws of the demanding state. *Kentucky v. Dennison,* 24 How., 66, 103, 16 L. Ed., 717, 728.

There is no express grant to the Congress of legislative power to execute this provision, but in the opinion delivered in the case just cited *Chief Justice Taney* said that upon this body devolved the duty of providing by law the regulations necessary to carry the compact into execution. These regulations embrace the several statutes pertaining to the extradition of fugitives from justice, one of which is in the following words: "Whenever the executive authority of any state or territory demands any person as a fugitive from justice, of the executive authority of any state or territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any state or territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the state or territory from whence the person so charged has fled, it shall be the duty of the executive authority of the state or territory to which such person has fled to cause him to be arrested and secured, and to cause notice of the arrest to be given to the executive authority making such demand, or to the agent of such authority appointed to receive the fugitive, and to cause the fugitive to be delivered to such agent when he shall appear. If no such agent appears within six months from the time of the arrest, the prisoner may be discharged." U. S. C. A., sec. 662.

When pursuant to this statute, the executive authority of a state demands any person as a fugitive from justice, of the executive authority of another state, the requisition may be challenged by the writ of *habeas corpus* issuing from a state court, the Congress not having undertaken to invest the judicial tribunals of the United States with exclusive jurisdiction to issue writs of *habeas corpus* in proceedings for arrest of fugitives from justice. *Robb v. Connolly,* 111 U. S., 624, 28 L. Ed., 542.

In the event of such challenge it must appear that the person demanded is charged with a crime against the laws of the state from whose justice he is alleged to have fled, by an indictment or affidavit certified as authentic by the executive of the demanding state, and that the person demanded is a fugitive from justice. The first of these requisites is a question of law which upon the face of the papers is open to judicial inquiry; the second is a question of fact, which the governor

upon whom the demand is made must, in the first instance, decide upon such evidence as is satisfactory to himself. *Roberts v. Reilly,* 116 U. S., 80, 29 L. Ed., 544; *Cook v. Hart,* 146 U. S., 183, 36 L. Ed., 934; *Munsey v. Clough,* 196 U. S., 364, 49 L. Ed., 515. But on neither of these points is the warrant issued by the executive of the asylum state necessarily conclusive; the person demanded may by *habeas corpus* contest the requisition on the ground that he is not charged with the commission of a crime in the demanding state or that he is not a fugitive from justice. *In re Veasey,* 196 N. C., 662.

Upon these two grounds the petitioner rests his demand for release from custody, but particularly upon the first—that the affidavit and the warrant do not technically or substantially charge him with a violation of the law of Virginia. This contention, as pointed out, involves a question of law which must be determined exclusively upon the face of the record. *United States v. Pridgeon,* 153 U. S., 48, 38 L. Ed., 631; *S. v. Edwards,* 192 N. C., 321; *In re Holley,* 154 N. C., 163.

It was of course within the power of the State of Virginia, except as restrained by the Constitution of the United States, to declare what acts shall be offenses against its laws and to establish the forms of its process and pleadings; and if it is found that the affidavit and warrant charge the petitioner with a crime substantially in the language of the statute upon which they purport to be based they will not be held ineffective for want of precise or technical accusation. *Ex Parte Reggel,* 114 U. S., 642, 29 L. Ed., 250. For this reason we are concerned not with the sufficiency of the affidavit as a criminal pleading but with its sufficiency as a charge of crime, the question being whether in a "broad and practical sense" it charges the petitioner with crime in the state from which he is said to have fled. *Pierce v. Creecy,* 210 U. S., 386, 52 L. Ed., 1113. In passing upon the latter question we should not set up an "impracticable standard of particularity," or refer to a warrant all the technicalities of an indictment or information, but we should adhere to the established rule that the instrument charging an offense must substantially charge all its essential elements. *United States v. Standard Brewery,* 251 U. S., 210, 64 L. Ed., 229; *United States v. Mann,* 95 U. S., 580, 24 L. Ed., 531; *United States v. Cruikshank,* 92 U. S., 542, 23 L. Ed., 588.

This in effect is the provision of the Uniform Criminal Extradition Act passed by the General Assembly of 1931, and effective since the seventh of March. P. L., 1931, ch. 124. Section 3 provides that the affidavit made before the magistrate must substantially charge the alleged fugitive with crime; and section 5 provides that a warrant of extradition must not be issued unless the documents presented by the

executive authority making the demand show that the accused is lawfully charged by . . . affidavit made before a magistrate of the demanding state with having committed a crime under the laws of that state.

The statute with a breach of which the warrant purports to charge the petitioner is as follows:

"First. Any person who, with intent to defraud, shall make or draw or utter or deliver any check, draft, or order for the payment of money, upon any bank, banking institution, trust company, or other depository, knowing, at the time of such making, drawing, uttering or delivering, that the maker or drawer has not sufficient funds in, or credit with, such bank, banking institution, trust company, or other depository, for the payment of such check, draft or order, although no express representation is made in reference thereto, shall be guilty of larceny.

Second. Any person who, under the provisions of this act, would be guilty of grand larceny shall, in the discretion of the jury or the court trying the case without a jury, be confined in the penitentiary not less than one year nor more than five years, or be confined in jail not exceeding twelve months and fined not exceeding five hundred dollars.

Third. In any prosecution under this section, the making or drawing or uttering or delivery of a check, draft, or order, payment of which is refused by the drawee because of lack of funds or credit, shall be prima facie evidence of intent to defraud and of knowledge of insufficient funds in, or credit with, such bank, banking institution, trust company, or other depository, unless such maker or drawer shall have paid the drawee thereof the amount due thereon, together with interest and protest fees, within five days after receiving notice that such check, draft, or order has not been paid to the drawee.

Fourth. The word credit, as used herein, shall be construed to mean any arrangement or understanding with the bank, banking institution, trust company, or other depository for the payment of such check, draft, or order.

Fifth. In any civil action growing out of an arrest under this section no evidence of statements or representations as to the status of the check, draft, order or deposit involved, or of any collateral agreement with reference to the check, draft, or order, shall be admissible unless such statements, or representations, or collateral agreement, be written upon the instrument." Virginia Code of 1930, sec. 4149(44).

We are mindful of the burden that would be imposed by a critical examination of the laws of states with whose jurisprudence, as suggested in *Pierce v. Creecy, supra,* we can have only a general acquaintance, if we should hold it necessary to show more than that the accused was

substantially charged with crime; but when tested by the liberal rule of a "substantial charge," the papers in question are fatally defective.

In *Turner v. Brenner*, 121 S. E., 510, the Supreme Court of Appeals of Virginia held that the gravaman of the offense denounced by the foregoing statute is the "intent to defraud." There is no such averment in the affidavit. It should be charged that the petitioner knew he had not sufficient funds in or credit with the bank to make payment of the checks. This averment likewise is wanting. Indeed, there is no charge that he did not have sufficient funds on deposit when the checks were cashed; and the assertion that he drew the checks can be supported only as an inference or by a somewhat strained construction of words.

We apprehend that the third paragraph of the statute can avail the State only when the warrant or indictment charges the fraudulent intent and the drawer's knowledge that his funds were insufficient.

We are of opinion that the affidavit and the warrant do not charge a crime and that the petitioner should be discharged. Judgment
    Reversed.