**Application of MIDDLEBROOKS.**
**No. 10586-C.**

United States District Court
S. D. California, Central Division.
Feb. 3, 1950.

Margolis & McTernan and Herbert W. Simmons, Jr., Los Angeles, Cal., Elizabeth Murray, Santa Barbara, Cal., for petitioner.

David S. Licker, District Attorney, Santa Barbara, Cal., Vern B. Thomas, Assistant District Attorney, Santa Barbara, Cal., for respondent.

Loren Miller, Los Angeles, Cal., for National Ass'n for Advancement of Colored People, Eugene Cook, Attorney General of the State of Georgia, amici curiæ.

CARTER, District Judge.

In this proceeding, Sylvester Middlebrooks, Jr., petitioned for a writ of habeas corpus, alleging that he was illegally held in custody by the Sheriff of Santa Barbara County, California, for extradition to the State of Georgia to there serve out the balance of a sentence imposed by a State court of Georgia; and that the custody of the California Sheriff was illegal, because:

(1) The conviction and sentence in the State of Georgia was void by reason of the failure of Middlebrooks to have counsel;

(2) There was actually no plea of guilty or trial before sentence;

(3) That the sentence and judgment of the State of Georgia violated the due process clause of the Fourteenth Amendment, in that it imposed upon Middlebrooks cruel and unusual punishment by the use of a chain gang;

(4) Other contentions not here pertinent.

The Sheriff of Santa Barbara county, John D. Ross, filed a return on the date of hearing, setting forth that he held custody of petitioner by virtue of a warrant issued by the Governor of the State of California, issued pursuant to a written demand for extradition by the Governor of the State of Georgia.[1]

By stipulation of the parties the petition for the writ was considered a traverse to the return.

The petition for the writ further alleged that the petitioner had exhausted all his remedies in the State of California and in the Supreme Court of the United States by allegations that prior applications for writs of habeas corpus were made to the Superior Court, the District Court of Appeal, and the Supreme Court of the State of California, and that each of the applications was denied.

It alleged further that an application for a stay of execution was made to the Supreme Court of California, for the purpose of allowing counsel to petition the Supreme Court of the United States for a writ of certiorari, and that the same was denied.

Successive applications were made to Mr. Justice Douglas and Mr. Justice Black of the United States Supreme Court for a similar stay for the same purpose, and were successively denied. It was conceded by the parties that these steps have been taken, and petitioner's exhibit 9 contains copies of the successive petitions for writs and for stay referred to above.

Petitioner complains of action of the State of California in apprehending and holding petitioner in custody on the ground that such state action is in violation of the Fourteenth Amendment of the Constitution of the United States, in that it deprives petitioner of due process of law on the grounds stated.

The Facts

Middlebrooks is a Negro. Called as a witness, he testified he was born February 11, 1917 in Macon, Georgia. He left school at the age of 12 or 13 and never finished the third grade. In 1931, when 14 years of age, he was arrested for burglary, taken before a juvenile court and committed to a reformatory, The Georgia Training School for Boys.

He spent about three months in the school, escaped, was re-arrested, sent again to the school, spent another five months and escaped again.

1. The return attaches copy of the warrant issued by the Governor of California and copies of demand by the Governor of Georgia, together with the supporting copy of indictment from Bibb County, Georgia, and the sentence and commitment.

Middlebrooks was next arrested in June or July of 1934. He was then 17. He was held in jail, and in November 1934, the grand jury of Bibb County, Georgia, returned an indictment charging him with five counts of burglary.[2]

He was held in custody until February 8, 1935, at which time he was sentenced to one year on each of the five counts of the burglary indictment, to run consecutively. It is this sentence which is the basis of the demand for extradition and the issuance of the warrant on which petitioner is now held.

Middlebrooks testified to the facts surrounding his alleged trial and sentence as follows: That on the morning of February 8, 1935, the jailer came to his cell and said, in substance,—"Get ready for trial in 15 minutes;" that he was taken into the court room where the Sheriff and Judge were present; that up to that time he had not been informed of what he was charged, nor had any copy of the indictment been delivered to him; that the following then transpired: The Judge said, "Don't you know you can't go around breaking the laws of Georgia?" The petitioner denied that he had broken any laws and said he wanted a lawyer and a jury. The Judge said, in substance, "I could give you 20 years, instead I am going to give you 5 years." That he was then taken to jail and assigned to a chain gang in Walton County, near Monroe, Georgia.

Petitioner's exhibit No. 2, the indictment contains on the back thereof, the following language:

waives being
"The Defendant ................ formally arraigned, and pleads guilty. under each of the counts of the indictment. This Feb. 8th, 1935.
　　　　　　Chas. H. Garrett—Sol.Gen.
Copy of the Bill of Indictment and List of Witnesses, sworn before the Grand Jury, waived before arraignment.
　　　　————Defendant's Attorney."

Nowhere else in the indictment form, nor in the sentence and commitment, is there any space for the name of an attorney for the defendant, nor does the name of an attorney appear anywhere therein.

Middlebrooks testified at length as to his experience on the chain gang in Walton County, Georgia. To summarize his extensive testimony briefly; 50 or 60 men were housed in one large room, 40 x 50 feet, with beds in tiers. No toilet facilities were available except large garbage cans which leaked badly and were emptied once a day. The prisoners worked from sun-up until sun-down, with a half hour off for lunch in winter and an hour off in summer time.

The food, and vermin and filthy substances contained therein, caused the prisoners to become sick with nausea and dysentery.

The prisoners were attended by guards armed with guns and sticks. The prisoners were often beaten and whipped. Double shackles were used, consisting of a band on each ankle and a chain 14 to 16 inches long in between. "Picts" were also used, consisting of long points emanating horizontally from the band at the ankle. These were used if the prisoner did not work sufficiently hard or if the guards thought he might attempt to run away.

"Stocks" were used. He described one in which he had been placed on six different occasions for approximately one hour each. The prisoner was seated on the narrow edge of a 2 x 4, his wrists and ankles placed through holes in the stock. His body thereby leaned forward at a 45 degree angle. A 2 x 4 was wired across his knees to keep them pressed down. When a prisoner was removed from the stocks, even after a one hour detention, he often was unable to walk and had to be dragged to the bull pen.

Sweat boxes were in use, consisting of small buildings 3 feet wide, 6 feet long, without light or heat. Often the prisoner was placed in the box without clothes, given

2. The similarity, in fact identity, of the names of the victims on petitioner's exhibit No. 1, having reference to the juvenile offense, and the names of the victims in petitioner's exhibit No. 2, the indictment, show that the indictment was based upon the burglary acts committed when Middlebrooks was 14.

two blankets, bread and water. The petitioner spent seven days in a sweat box.

Shackles were kept on at night, and the waist chains of the series of prisoners in one tier in the sleeping quarters would be threaded onto a long chain that ran the full length of the sleeping quarters, and the prisoners then kept in place by the locking of the long chain.

In addition, Middlebrooks related various individual acts of violence and brutality, some of which were directed towards him while other acts were directed against other prisoners.

After approximately two years he escaped and was brought back and served another year and thirteen days and escaped the second time. In April 1942, he was inducted into the army and went AWOL in August 1942. He was arrested by the Military and sentenced by Military court to fifteen years imprisonment, which was later commuted to a total of approximately three years and five months. At the time of his release from Military incarceration, he was in the State of California and was arrested by the Sheriff of Santa Barbara county, respondent herein, by virtue of a hold placed on him while in Military custody.

There was no cross-examination of Middlebrooks.

Horace Conkle, a resident of Santa Barbara county, was called as a witness and described chain gangs in Colquett county, Georgia, in which he served following a conviction for burglary, in 1934. His testimony concerning housing, food, shackles, sweat box and whippings generally corroborated the petitioner's description. Conkle testified further that he was a visitor in Georgia in 1945 and 1946 and the chain gangs were still in operation, performing the same work with the same hours, using the same quarters. He saw shot guns and hickory sticks. He stated that two counties, Bibb and Muskogee, had adopted eight hour limits for work.

There was no cross-examination of Conkle.

No evidence was offered by respondent [3] except the certified copy of the Sheriff's return to the writ which had been filed in the Superior court of Santa Barbara county.

The respondent Sheriff asked dismissal of the petition for the writ on the grounds that it did not state sufficient facts to constitute a cause of action upon which relief could be granted and on lack of jurisdiction in the court.

Similar objection was made to the opening statement of petitioner's counsel.

Objection was also made to the testimony of the petitioner and the witness Conkle, and motions were made to strike the testimony after it was given on the same grounds.

There was conflict on the issue of the alleged trial, between the record of the State court and the uncontradicted testimony of the petitioner. The court is not bound by the bare record. Upon application for a writ the court must inquire at petitioner's request into all facts going to:

"* * * the very truth and substance of the causes of his detention, although it may become necessary to look behind and beyond the record of his conviction to a sufficient extent to test the jurisdiction of the state court to proceed to judgment against him. * * * it is open to the courts of the United States, upon an application for a writ of habeas corpus, to look beyond forms and inquire into the very substance of the matter * * *."

3. This is significant, for the reason that petitioner made the same contentions in his petitions for writ, in the State courts that he made in the District Court, and was afforded a hearing by the Superior court of Santa Barbara county. Respondent was therefore sufficiently informed prior to the trial in this court, of the nature of petitioner's contentions, to have presented contradictory evidence by way of affidavit or otherwise. In addition, the attorney general of the State of Georgia filed a brief on the law as amicus curiae. The court can assume he was therefore informed of the nature of the allegations in petitioner's petition for writ of habeas corpus, including the allegations of cruel and unusual punishment, of lack of counsel and of the alleged sentence without plea or trial.

Frank v. Mangum, 1915, 237 U.S. 309, 330–331, 35 S.Ct. 582, 588, 59 L.Ed. 969, 981. See also Johnson v. Zerbst, 1938, 304 U.S. 458, 466–467, 58 S.Ct. 1019, 82 L.Ed. 1461, 1467–1468, 146 A.L.R. 357; Waley v. Johnston, 316 U.S. 101, 104–105, 62 S.Ct. 964, 86 L.Ed. 1302, 1304; Mooney v. Holohan, 294 U.S. 103, 112, 115, 55 S.Ct. 340, 79 L.Ed. 791, 794, 795, 98 A.L.R. 406; Moore v. Dempsey, 261 U.S. 86, 91, 43 S.Ct. 265, 67 L.Ed. 543, 545; Parker, Limiting the Abuse of Habeas Corpus, 8 F.R.D. 171, 171–172.

The court finds that:

(1) Petitioner was not yet 18 at the time of his sentence on the indictment; that he had not finished the third grade in grammar school and was generally ignorant and uneducated; that he was not given at any time, a copy of the charges against him; that he asked for an attorney but that one was not assigned and that no attorney consulted with him or appeared for him; that the only unofficial person he saw while in jail, during the period of his arrest in June of 1934 until his sentence on February 8, 1935, was his mother.

(2) That the defendant was not afforded a trial or an arraignment, but instead was brought before the Judge and sentenced without having entered a plea of guilty, or without a trial having occurred.[4]

(3) The court found that the assignment to, and the work on the chain gang constituted cruel and unusual punishment and that this type of imprisonment was part of the penal system of the State of Georgia and incident to the sentence imposed upon the petitioner by the Georgia court.

The Questions Presented

(1) Was the failure to assign counsel, under the facts and circumstances and in light of petitioner's age, education and experience, a deprivation of due process of law?

(2) Was the sentence without plea or trial, namely the kangaroo court, a deprivation of due process of law?

(3) Is cruel and unusual punishment, which is prohibited by the Eighth Amendment, included within the protection of the Fourteenth Amendment against State action?

(4) Assuming questions 1, 2 and 3 are answered in the affirmative, does the action of the State of California, through the Sheriff of Santa Barbara county in arresting and detaining petitioner, constitute violation of the due process clause of the Fourteenth Amendment?

(5) Should relief be denied because of the Uniform Extradition Act of the State of California, § 1548.2 of the Penal Code of the State of California, and the Federal provisions, Art. IV, § 2, Clause 2 of the Constitution of the United States and the acts of Congress, regulating interstate extraditions, 18 U.S.C.A. § 3182.

(6) Has petitioner exhausted his remedies in the California courts so as to permit him to sue for relief in a Federal court?

(7) Must petitioner have also exhausted his remedies in the State of Georgia?

In addition to the novelty of the questions presented, the case has additional significance.

A vocal and disloyal political group in the country continually seizes upon alleged violation of rights of Negros, not for the purpose of honestly assisting the Negro, but for the purpose of allowing this group to proclaim itself as the protector of Negro rights. Its object of course is to enlist the Negro in its ranks and its disloyal cause.

Courts, and particularly Federal courts should be ever ready to listen with a sympathetic and tolerant ear to persons who claim their constitutional rights have been abridged.

The untreated wound becomes an ulcer and the ignored grievance a cause.

4. The court makes this finding for the following reasons: The court observed petitioner in court and was of the opinion that the petitioner spoke the truth; and for the reasons set forth in note 3 supra.

## I.

The Failure to Afford Petitioner Counsel, Under the Particular Facts Involved, Constituted Denial of Due Process by the State of Georgia.

The Sixth Amendment to the Constitution of the United States, referring to the "Assistance of Counsel" [5] is a limitation on the power of the Federal government, and not the States. See Adamson v. People of State of California, 1947, 332 U.S. 46, 67 S.Ct. 1672, 91 L.Ed. 1903, 171 A.L.R. 1223.

In Betts v. Brady, 1942, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595, Mr. Justice Roberts, speaking for the Supreme court, said, 316 U.S. at page 473, 62 S.Ct. at page 1262: " * * * the Fourteenth Amendment prohibits the conviction and incarceration of one whose trial is offensive to the common and fundamental idea of fairness and right, and while want of counsel in a particular case may result in a conviction lacking in such fundamental fairness, we cannot say that the amendment embodies an inexorable command that no trial for any offense or in any court, can be fairly conducted and justice accorded a defendant who is not represented by counsel."

The decision in each particular case will rest on the facts of that case. Wade v. Mayo, 1948, 334 U.S. 672, 68 S.Ct. 1270, 92 L.Ed. 1647 and Uveges v. Commonwealth of Pennsylvania, 1948, 335 U.S. 437, 69 S.Ct. 184. Thus, although Mr. Justice Reed dissented in the Wade case,[6] he wrote the opinion for the court in the Uveges case, and at page 440 of 335 U.S., at page 185 of 69 S.Ct. he said:

" * * * Some members of the Court think that where serious offenses are charged, failure of a court to offer counsel in state criminal trials deprives an accused of rights under the Fourteenth Amendment. They are convinced that the services of counsel to protect the accused are guaranteed by the Constitution in every such instance. See Bute v. People of State of Illinois, 333 U.S. 640, dissent, 677-679, 68 S.Ct. 763, 782, 783 [92 L.Ed. 986]. Only when the accused refuses counsel with an understanding of his rights can the court dispense with counsel. Others of us think that when a crime subject to capital punishment is not involved, each case depends on its own facts. See Betts v. Brady, 316 U.S. 455, 462, 62 S.Ct. 1252, 1256, 86 L.Ed. 1595. Where the gravity of the crime and other factors—such as the age and education of the defendant, the conduct of the court or the prosecuting officials, and the complicated nature of the offense charged and the possible defenses thereto—render criminal proceedings without counsel so apt to result in injustice as to be fundamentally unfair, the latter group holds that the accused must have legal assistance under the Amendment whether he pleads guilty or elects to stand trial, whether he requests counsel or not. Only a waiver of counsel, understandingly made, justifies trial without counsel.

"The philosophy behind both of these views is that the due process clause of the Fourteenth Amendment or the Fifth Amendment requires counsel for all persons charged with serious crimes, when necessary for their adequate defense, in order that such persons may be advised how to conduct their trial. The application of the rule varies as indicated in the preceding paragraph.

"Under either view of the requirements of due process, the facts in this case required the presence of counsel at petitioner's trial. He should not have been permitted to plead guilty without an offer of the advice of counsel in his situation. If the circumstances alleged in his petition are true, the accused was entitled to an adviser to help him handle his problems. Petitioner was young and inexperienced in the intricacies of criminal procedure

---

5. Sixth Amendment: "In all criminal prosecutions, the accused shall enjoy the right to * * * have the Assistance of Counsel for his defense."

6. Although the dissent hinges on Justice Reed's conclusion that State remedies were available, 334 U.S. page 697, 68 S. Ct. page 1282, note the references to petitioner's right and opportunity to secure counsel to review his alleged erroneous conviction, 334 U.S. page 697, 68 S.Ct. page 1282.

when he pleaded guilty to crimes which carried a maximum sentence of eighty years. There is an undenied allegation that he was never advised of his right to counsel. The record shows no attempt on the part of the court to make him understand the consequences of his plea. * * *"

See Gibbs v. Burke, 1949, 337 U.S. 773, 69 S.Ct. 1247, where the failure of a State court to provide counsel for an adult (among other irregularities) was held a deprivation of due process.

The court said, 337 U.S. page 781, 69 S.Ct. page 1251:

"* * * This case is of the type referred to in Betts v. Brady, supra, 316 U. S. at page 473, 62 S.Ct. at page 1261, 86 L.Ed. 1595 as lacking fundamental fairness because neither counsel nor adequate judicial guidance or protection was furnished at the trial.

"A defendant who pleads not guilty and elects to go to trial is usually more in need of the assistance of a lawyer than is one who pleads guilty. The record in this case evidences petitioner's helplessness, without counsel and without more assistance from the judge, in defending himself against this charge of larceny. We take no note of the tone of the comments at the time of the sentence. The trial was over. The questionable issues allowed to pass unnoticed as to procedure, evidence, privilege, and instructions detailed in the first part of this opinion demonstrate to us that petitioner did not have a trial that measures up to the test of fairness prescribed by the Fourteenth Amendment."

In the case at bar, Middlebrooks was a Negro boy, just under 18 years of age at the date of sentence. He had not finished the third grade in school, and was held under arrest for a serious crime, burglary. He was not advised of the charge, nor given any copy of the indictment. He was advised of the consequences, the penalties of the crime, but when he asked for a lawyer, his request was refused and he was sentenced.

Under these facts, it was a denial of due process under the Fourteenth Amendment for the State of Georgia to have failed to afford him counsel.

## II.

The Sentence Imposed on Petitioner, Without the Entry of a Plea of Guilty, or Without a Trial First Had, Constituted a Violation of the Due Process Clause of the Fourteenth Amendment.

Having found petitioner's allegations true, there was obviously a denial of due process under the Fourteenth Amendment, where the state court sentenced in the absence of a plea of guilty or a trial and finding of guilt.

Simons v. United States, 9 Cir., 1941, 119 F.2d 539, certiorari denied, 1941, 314 U.S. 616, 62 S.Ct. 78, 86 L.Ed. 496, states, 119 F.2d at page 544: "* * * Due process of law in a criminal proceeding has been defined as consisting of 'a law creating or defining the offense, an impartial tribunal of competent jurisdiction, accusation in due form, notice and opportunity to defend, trial according to established procedure, and discharge unless found guilty'. See 16 C.J.S., Constitutional Law, § 579, p. 1171, and cases cited. * * *"

Hague v. C. I. O., 3 Cir., 1939, 101 F.2d 774, modified on other grounds, 1939, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423, states, 101 F.2d at page 781, 782: "* * * An individual has a right to trial by properly constituted judicial authority upon a defined standard of criminal responsibility set forth by statute or ordinance. He must have the opportunity to be heard and to call witnesses in his own defense. This is the very essence of due process of law as prescribed by the Fourteenth Amendment. Powell v. State of Alabama, 287 U.S. 45, 68, 53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527; Snyder v. Commonwealth of Massachusetts, 291 U.S. 97, 122, 54 S.Ct. 330, 78 L.Ed. 674, 90 A.L.R. 575; United States v. Ballard, D.C., 12 F.Supp. 321, 325. * * *"

In Gibbs v. Burke, 1949, 337 U.S. 773, 69 S.Ct. 1247, when defendant had a trial but no counsel, the court held it lacked

"fundamental fairness." 337 U.S. page 781, 69 S.Ct. page 1251.

## III.

The Punishment Inflicted by the State of Georgia Through Its Chain Gang is a Deprivation of Due Process of Law, Contrary to the Fourteenth Amendment.

■ The Eighth Amendment to the Constitution prohibits cruel and unusual punishment. Like the Sixth Amendment, it is a limitation on the power of the Federal government, and is not operative against State action.

There has been considerable discussion and much contention that the first eight Amendments have been included, in substance, by reference in the Fourteenth. But this question was squarely presented to the Supreme Court in a case involving the Fifth Amendment.

In a landmark decision, the Court by a 5 to 4 decision, held to the contrary. Adamson v. People of State of California, 1947, 332 U.S.46, 67 S.Ct. 1672, 91 L.Ed. 1903, 171 A.L.R. 1223.[7]

However, in the language of Mr. Justice Frankfurter, concurring in State of Louisiana ex rel. Francis v. Resweber, 1947, 329 U.S. 459, at page 468, 67 S.Ct. 374, at page 378, 91 L.Ed. 422: "In an impressive body of decisions [the Supreme Court] has decided that the Due Process Clause of the Fourteenth Amendment expresses a demand for civilized standards which are not defined by the specifically enumerated guarantees of the Bill of Rights. They neither contain the particularities of the first eight amendments, nor are they confined to them."

■ This language by Mr. Justice Frankfurter, concurring with the majority opinion in the above case, coupled with the dissent by Justices Burton, Douglas, Murphy and Rutledge, indicates that Francis v. Resweber, supra, substantially holds that cruel and unusual punishment inflicted by a State is a deprivation of due process of law, contrary to the Fourteenth Amendment. It is true that the majority assumed, without so deciding, that a violation of the provisions of the Eighth Amendment would be violative of the due process clause of the Fourteenth Amendment. This of course is not authority. Mr. Justice Reed, who wrote the majority opinion, however, observed later therein, 329 U.S. page 463, 67 S.Ct. page 376: "Prohibition against the wanton infliction of pain has come into our law from the Bill of Rights of 1688. The identical words appear in our Eighth Amendment. The Fourteenth would prohibit by its due process clause execution by a State in a cruel manner." Citing In re Kemmler, 1890, 136 U.S. 436, at page 446, 10 S.Ct. 930, at page 933, 34 L.Ed. 519.

In Johnson v. Dye, 3 Cir., 1949, 175 F.2d 250, reversed per curiam, 338 U.S. 864, 70 S.Ct. 146, there was a square holding that the infliction of cruel and unusual punishment by a State was denial of due process of law contrary to the Fourteenth Amendment. While this decision was reversed by the Supreme Court of the United States, 338 U.S. 864, 70 S.Ct. 146, the citation of Ex parte Hawks, 1944, 321 U.S. 114, 64 S.Ct. 448, 88 L.Ed. 572, in the reversal, indicates that the case was reversed because of the circuit's holding that State remedies need not be exhausted. The Supreme Court, contrary to its normal practice in such cases, took unusual care to in-

---

7. For an extensive discussion, see 2 Stanford Law Review 5, Does the Fourteenth Amendment Incorporate the Bill of Rights?
(1) The Original Understanding, by Charles Fairman (p. 5).
(2) The Judicial Interpretation, by Stanley Morrison (p. 140).
But see Wolf v. People of State of Colorado, 1949, 338 U.S. 25, 69 S.Ct. 1359, wherein Mr. Justice Rutledge, dissenting sees an admission, 338 U.S. page 47, 69 S.Ct. page 1371, in the language of the majority, 338 U.S. page 27, 28, 69 S.Ct. page 1361, that the substance of the Fourth Amendment is " * * * implicit in 'the concept of ordered liberty,' " and thus, through the Fourteenth Amendment valid against the states.

dicate the grounds of the reversal by a citation of the Hawks case.[8]

We expressly rely upon the language of Chief Judge Biggs of the 3rd Circuit, in Johnson v. Dye, 1949, 175 F.2d 250, at page 255: " * * * But we entertain no doubt that the Fourteenth Amendment prohibits the infliction of cruel and unusual punishment by a state. State of La. ex rel. Francis v. Resweber, supra. Compare Weems v. United States, 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793, 19 Ann.Cas. 705; In re Kemmler, 136 U.S. 436, 447, 10 S.Ct. 930, 34 L.Ed. 519. We are of the opinion that the right to be free from cruel and unusual punishment at the hands of a State is as 'basic' and 'fundamental' a one as the right of freedom of speech or freedom of religion. And it should be pointed out that actions of the employees of the prison system of Georgia must be deemed to be those of the State of Georgia. The fact that a state officer acts illegally cannot relieve a state of responsibility for his acts. Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495, 162 A.L.R. 1330. * * *"

■ It follows that the action of the State of Georgia, in making use of the chain gang in carrying out the sentence imposed upon the petitioner, is denial of due process, violative of the Fourteenth Amendment.

## IV.

The Action of the State of California, Through the Sheriff of Santa Barbara County in Arresting the Petitioner and Holding Him in Custody for Extradition to the State of Georgia, in Order That He May Be Again "Confined in the Georgia Penitentiary to Complete the Terms of His Sentence" is Action Violative of the Due Process Clause of the Fourteenth Amendment.

Petitioner bases his case upon the contention that California action in arresting and holding the petitioner in custody, constitutes a violation of the due process clause of the Fourteenth Amendment.

■ California, through the respondent, the Sheriff of one of its political subdivisions, has arrested the petitioner upon a warrant issued by the Governor of California, and now holds him in custody. The Fourteenth Amendment protects against all State action by any of its officers, executive or judicial. See Civil Rights Cases (U.S. v. Stanley), 1883, 109 U.S. 3, 11, 3 S.Ct. 18, 27 L.Ed. 835, 839. How can it be said that the action complained of is not State action by California?

■ California is a separate sovereignity. It acts through its Governor in issuing the warrant of arrest, on its own authority. Governors of States have refused to grant extradition and when a State refuses to grant the request of the demanding State no compulsion can be brought upon the State to honor the request.

Commonwealth of Kentucky v. Dennison, 1860, 24 How. 66, 65 U.S. 66, 16 L.Ed. 717. Thus we have State action, based on independent decision and not mere mechanical causation.

California has taken this action pursuant to the provisions of Art. IV, Sec. 2, Clause 2 of the Constitution of the United States, and the act of Congress regulating interstate extradition, 18 U.S.C.A. § 3182. California has further acted pursuant to the Uniform Extradition Act, a statute of the State of California.

Section 1548.2 of the Penal Code of the State of California, one of the provisions of that act, provides for the form and prerequisite allegations for the demand for extradition.

Section 1549.2 of the Penal Code, another provision, provides that the Governor shall sign a warrant of arrest under the State seal, directed to any peace officer in the State of California. Obviously, this is State action by California, regardless of the reasons therefor, or the validity thereof.

8. This conclusion is also reached in the interpretation placed upon Johnson v. Dye, by 2 Stanford Law Review 174, 184

(Case of the Fugitive from the Chain Gang).

In fact, the respondent relies on these constitutional and statutory provisions to support his position.

The action of the State of California may be ostensibly valid action, pursuant to the Federal constitutional provision and pursuant to California statutes and at the same time be State action depriving petitioner of due process of law under the Fourteenth Amendment. This is true on two grounds:

(1) The arrest and custody were ostensibly valid on the ground the petitioner was a fugitive from justice, who had escaped after a valid conviction and sentence, and that extradition had been demanded and petitioner arrested and held pursuant to a warrant from the Governor of California; but in view of the findings of this court, the Georgia conviction and sentence was void and of no legal effect because of the deprivation of counsel, and the mock trial to which petitioner was subjected. It follows, since the conviction is void, that California had no jurisdiction to arrest and has no jurisdiction to hold.

(2) The action of the State of California was requested by the State of Georgia for the purpose, as shown by the return of the respondent herein, "solely that he (the petitioner) may be brought back and again confined in the Georgia penitentiary to complete the term of his sentence." It now appears that the portion of the sentence heretofore served, was on a chain gang; and this court is justified in concluding[9] that upon his return to Georgia, petitioner would again be placed upon a chain gang.

 California therefore, through the respondent, Sheriff, becomes an active participant in subjecting the petitioner to what this court has found to constitute cruel and unusual punishment, in violation of the Fourteenth Amendment, California becomes therefore an active participant in attempting to again subject this petitioner to such punishment. This is State action by California, in violation of the due process clause of the Fourteenth Amendment.

## V.

Neither the Uniform Extradition Act of the State of California, Nor Article IV, § 2, Clause 2 of the Constitution of the United States Nor the Acts of Congress, Regulating Interstate Extraditions, Prevail Over the Fourteenth Amendment.

 The proposed rendition of the prisoner by California is pursuant to the compact to effect rendition of persons "charged in any State with Treason, Felony, or other Crime," contained in Art. IV, § 2, Clause 2 of the U. S. Constitution. But Art. IV does not require rendition which violates the Fourteenth Amendment of the same Constitution. This disposes of the respondent's contention that to grant the release of petitioner under this writ, the court must hold unconstitutional the Uniform Extradition Act of the State of California.

 Statutes constitutional on their face may not be used for unconstitutional purposes or with unconstitutional results. See Yick Wo v. Hopkins, 1886, 118 U.S. 356, 373–374, 6 S.Ct. 1064, 30 L.Ed. 220.

As we have stated herein action by a State in arresting and holding a prisoner for extradition, may be ostensibly lawful and then by the revelation and judicial finding of certain facts thereafter, may be determined to be unlawful custody, violative of the due process clause of the Fourteenth Amendment.

## VI.

Petitioner Has Exhausted His Remedies in the State Court of California.

 Petitioner has sought relief in the Superior, District Court of Appeal and the Supreme Court of the State of California.

In addition, he petitioned the Supreme Court of California for a stay in order that he might seek certiorari in the United States Supreme Court, but the stay was denied.

---

9. Note the words, "be brought back and again confined" in the Georgia demand.

He has thus gone farther than the petitioner in Morgan v. Horrall, 9 Cir., 1949, 175 F.2d 404.

There it was noted that Morgan, 175 F.2d page 407: " * * * made no attempt to secure from a Justice of the California Supreme Court or from a Justice of the Supreme Court of the United States a stay of execution of the judgment of the State Courts—this for the purpose of securing allowance of a reasonable time in which to obtain a writ of certiorari from the Supreme Court of the United States. * * * "

Middlebrooks also petitioned two Justices of the United States Supreme Court for a stay for the same purpose.

The only step he has not taken was to have petitioned the Supreme Court of the United States for certiorari. The law does not require the making of a futile petition for certiorari. It requires only the exhaustion of meaningful remedies. Wade v. Mayo, 1948, 334 U.S. 672, 682, 68 S.Ct. 1270, 92 L.Ed. 1647. Without the stay the petitioner would have been removed from California before the petition could have been presented and the case would have been moot.

The petitioner took the required and logical steps and has exhausted his remedies in the California courts.

## VII.

**The Petitioner Need Not Have Exhausted His Remedies in the State of Georgia.**

The three grounds which have been relied upon by petitioner for relief herein are, (1) the alleged failure to assign counsel; (2) the alleged mock trial, with absence of either a plea of guilty or a trial of the facts; (3) the alleged imposition of cruel and unusual punishment.

It is arguable that if petitioner returned to Georgia, he might be able to raise in the courts of Georgia, the first two points, and that a remedy would exist in that State, wherein he could have the conviction and sentence set aside, have counsel appointed and have the benefit of either a plea of guilty or a trial. As a practical matter, it is extremely remote that any of this relief would be granted him. Respondent, in substance, urges that he be returned to Georgia and there seek this relief.

This is unrealistic reasoning.

28 U.S.C.A. § 2254, is headed, "State custody; remedies in State courts." It reads as follows:

"An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

"An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented."

The section obviously contemplates a situation where the writ in the Federal court seeks the release of a prisoner held in a particular State's custody by virtue of a State court judgment in that State. The petitioner herein is held in custody in California by reason of the warrant for arrest issued by the Governor of the State of California to return the petitioner to Georgia to complete the service of the Georgia sentence. The section does not by its language, answer our inquiry.[10]

Moreover, no case has been called to our attention, nor can we find one where 28 U.S.C.A. § 2254, or the principle therein codified has been relied upon in a habeas corpus proceeding to require the exhaustion of the remedies in the demanding State, as well as in the asylum State.

10. The Reviser's Notes to 28 U.S.C.A. § 2254, states: "This new section is declaratory of existing law as affirmed by the Supreme Court. (See Ex Parte Hawk, 1944, 64 S.Ct. 448, 321 U.S. 114, 88 L.Ed. 572.)"

See Young v. Ragen, 337 U.S. 235, 69 S.Ct. 1073, 1074, Note 1 to the same effect.

In Morgan v. Horrall, 9 Cir., 1949, 175 F.2d 404, extradition was involved, wherein Colorado was demanding the prisoner. The Circuit affirmed the judgment on the ground that the petitioner had made no clear and convincing showing of violation of "rights under the Federal Constitution". 175 F.2d page 407. As an additional ground the Circuit court found that all available remedies in California had not been exhausted. Neither the Circuit or the District court, Ex parte Morgan, 78 F. Supp. 756, discussed or considered the question of exhausting State remedies in Colorado.

To sustain respondent's argument would require that a prisoner exhaust his remedies in every state in which a remedy was available, and in an extradition matter this would involve at least two states and possibly more.

But the argument is fallacious upon another ground. To sustain respondent's argument would require this District court to close its eyes to the violation of constitutional rights and basic liberties which have occurred, and to permit the return of the petitioner to the State of Georgia. If constitutional rights and basic liberties are to be protected, they must be protected in the courts where the questions arise and when the questions arise, and the shunting of a case from one court to another should as far as possible, be avoided.

As to petitioner's ground (3) the imposition of cruel and unusual punishment, the answer is clearer. The use of the chain gang is a part of Georgia's penal system. A requirement that the petitioner exhaust in Georgia his remedy on this particular point would be obviously an idle act, since the court can assume that the Georgia chain gangs are operated under and pursuant to Georgia law.[11]

The court is not unmindful of the large body of law holding in substance that lower Federal courts should not consider an application for writ of habeas corpus, where petitioner is detained under State process, except in rare cases where exceptional circumstances of peculiar urgency are shown to exist. In re Anderson, 9 Cir., 1941, 117 F.2d 939; Hawk v. Olson, 8 Cir., 1942, 130 F.2d 910, see cases collected at page 911.

But in Ex parte Hawk, 1944, 321 U.S. 114, at page 117, 64 S.Ct. 448, at page 450, 88 L.Ed. 572, in a per curiam decision, the court said:

"* * * The statement that the writ is available in the federal courts only 'in rare cases' presenting 'exceptional circumstances of peculiar urgency', often quoted from the opinion of this Court in United States ex rel. Kennedy v. Tyler, supra, [1925], 269 U.S. [13], 17, 46 S.Ct. 1, 3, 70 L.Ed. 138, was made in a case in which the petitioner had not exhausted his state remedies and is inapplicable to one in which the petitioner has exhausted his state remedies, and in which he makes a substantial showing of a denial of federal right.

"Where the state courts have considered and adjudicated the merits of his contentions, and this Court has either reviewed or declined to review the state court's decision, a federal court will not ordinarily reexamine upon writ of habeas corpus the questions thus adjudicated. * * *"

A further result has grown up in the cases which is apparent to anyone making a study thereof; the rule of the exhaustion of remedies in the State has been supplemented by the further rule that once the remedies have been exhausted and the highest court of the State has passed upon the problem, then Federal courts are reluctant to intervene because of comity and out of respect for State courts. Thus, there has been created an endless circle, which if followed to its logical conclusion would deny to a Federal District court the right to give

---

11. The supporting documents in the demand for extradition contain the application to the Governor of Georgia, executed by the Georgia State Board of Corrections. It reads in part: "* * * Sylvester Middlebrooks * * * while confined in said penitentiary escaped from Walton County Public Works Camp, Munroe, Georgia, a branch of the Georgia Penitentiary * * *."

relief for violations of basic constitutional rights.

The Supreme Court states in Ex parte Hawk, supra, "a federal court *will not ordinarily reexamine* upon writ of habeas corpus the questions thus adjudicated." (Emphasis supplied.)

■ The general rule rests upon the balance between the State and Federal powers and jurisdictions, and the niceties of the comities existing between these separate sovereignties. The observance of these niceties and the concern concerning comity must give way on the assertion and the finding of the violation of basic constitutional rights.

Such a violation constitutes an exceptional case. It is therefore important that the exception be recognized and that where basic constitutional rights and liberties have been violated, that a Federal Court should not refuse to grant relief.

28 U.S.C.A. § 2241, reads in part as follows: "Power to grant writ * * * (c) The writ of habeas corpus shall not extend to a prisoner unless—(3) He is in custody in violation of the Constitution or laws or treaties of the United States".

■ It is patent that this petitioner is in custody in violation of the Constitution of the United States. We hold, therefore, that our duty is to entertain and grant his petition and not to require him to first exhaust remedies in the State of Georgia, as well as in the State of California.