ROSS, Sheriff v. MIDDLEBROOKS.

No. 12572.

United States Court of Appeals
Ninth Circuit.

March 30, 1951.

---

David S. Licker, Dist. Atty., County of Santa Barbara, Vern B. Thomas, Asst. Dist. Atty., Santa Barbara, Cal., for appellant.

A. L. Wirin, Loren Miller, Los Angeles, Cal., Elizabeth Murray, Santa Barbara, Cal., Nanette Dembitz, New York City, for appellee.

Eugene Cook, Atty. Gen., of Georgia, M. H. Blackshear, Jr., Deputy Asst. Atty. Gen., Lamar W. Sizemore, Asst. Atty. Gen. (Edward E. Dorsey, Atlanta, Ga., of counsel), for State of Georgia, as amici curiæ.

Before BONE, ORR and POPE, Circuit Judges.

ORR, Circuit Judge.

We have for consideration a so-called "chain gang fugitive" case, presenting the question of the appropriate scope of inquiry on habeas corpus proceedings brought by a prisoner held for interstate rendition. Middlebrooks[1] was convicted and sentenced in Georgia and escaped from a Georgia chain gang. He was found in California and arrested by the California authorities pursuant to a demand for rendition from the Governor of the State of Georgia. The demand appeared on its face to be valid, and was accompanied by certified copies of the indictments concerned and other papers.

Middlebrooks then sought release on a writ of habeas corpus in the California courts and exhausted his remedy in that state. The same contentions were made in the state courts as here. The state courts denied the petitions on the ground that the California courts had no jurisdiction to determine the questions presented. Middlebrooks then petitioned the United States District Court for the Southern District of California for relief. He alleged, and the District Court found, that (1) the Georgia conviction which gave rise to Middlebrooks' incarceration was void, in that it was procured without a trial, without a plea of guilty, and without the assistance of counsel, in violation of the Fourteenth Amendment; and (2) Middlebrooks had been, and if returned to Georgia would be, subjected to cruel and unusual punishment, in violation of the Fourteenth Amendment. On these findings the District Court ordered his release.

Insofar as we are advised this is the fifth "chain gang fugitive" case to reach a court of appeals. These cases have resulted in substantial disagreement as to the permissible, or appropriate, scope of inquiry on habeas corpus in the asylum state. Two circuits have held that the federal court in the asylum state has no *power* to go beyond an examination of the superficial validity of the rendition papers.[2] This view rests on the theory that habeas corpus tests only "the legality of the detention," and that detention in the asylum state pursuant to a request for rendition is legal, if the request itself appears to be valid.[3]

Two circuits held that the federal court in the asylum state has jurisdiction to inquire into the validity of the detention to which the prisoner will be subjected in the demanding state, if he is returned to that state.[4] This view rests on the premise that a demand for rendition carries no more

---

1. For an extended statement of the facts see, D.C., 88 F.Supp. 943.

2. Davis v. O'Connell, 8 Cir., 1950, 185 F.2d 513; Johnson v. Matthews, 1950, 86 U.S.App.D.C. 376, 182 F.2d 677, certiorari denied 340 U.S. 828, 71 S.Ct. 65.

3. See, "The Case of the Fugitive from the Chain Gang," 2 Stanford Law Review 174, 180–181 (1949).

4. Johnson v. Dye, 3 Cir., 1949, 175 F.2d 250, reversed sub nom. Dye v. Johnson, 1949, 338 U.S. 864, 70 S.Ct. 146; cf. Johnson v. Dye, D.C.W.D.Pa.1950, 94 F.Supp. 133; United States ex rel. Jackson v. Ruthazer, 2 Cir., 1950, 181 F.2d 588, certiorari denied 339 U.S. 980, 70 S.Ct. 1027.

validity than the proceedings which gave rise to that demand; the prisoner is, therefore, "illegally detained" if he is detained pursuant to a demand based upon a void conviction.[5]

One only of said four decisions resulted in an order that the prisoner be discharged.[6] In that case the Supreme Court granted certiorari, and reversed.[7] The reversal was based upon the rule that a prisoner seeking relief by way of habeas corpus in the federal court, on the ground that detention by state authorities violates the Federal Constitution, must first "exhaust the remedies" in the state courts.

The question of whether the prisoner must first "exhaust the remedies" in the courts of the demanding state, or merely in the courts of the asylum state, was not defined in Dye v. Johnson, 338 U.S. 864, 70 S.Ct. 146, as the prisoner in that case had not sought relief in the courts of either state.[8] The formal proposition that habeas corpus tests only the legality of the present detention in the asylum state leads to the logical conclusion that only the remedies in the asylum state must be exhausted.[9] On this theory, under the holdings in the Second and Third Circuit cases, Middlebrooks was entitled to a hearing in the United States District Court in California, because he had exhausted all the California remedies.[10]

The rule of "exhaustion of remedies," however, is not a dry rule of logic, but a rule of comity. As recently summarized in Darr v. Burford, 1950, 339 U.S. 200, 70 S.Ct. 587, 94 L.Ed. 761, this discretionary rule grew out of a recognition that "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation". Id. 339 U.S. at page 204, 70 S.Ct. at page 590. Assuming that the District Court had juris-

5. See, Horowitz and Steinberg, "The Fourteenth Amendment—Its Newly Recognized Impact on the 'Scope' of Habeas Corpus in Extradition," 23 Southern California Law Review 441, 449–54 (1950). This rationale is less persuasive where detention in the demanding state, if the prisoner is returned, would violate the Constitution because of the nature of the detention, rather than because it is the outgrowth of a void conviction. In this connection, the authors suggest that detention by the asylum state for the purpose of turning the prisoner over to a demanding state which will subject the prisoner to cruel and unusual punishment (if a satisfactory factual showing can be made) would constitute cooperative action by the asylum state in a deprivation of constitutional rights.

6. Johnson v. Dye, 3 Cir., 1949, 175 F.2d 250. In the Jackson case, the Second Circuit declined to consider the merits of Jackson's allegations, on the ground that Jackson had already been given a full hearing on those allegations in the New York courts.

7. 338 U.S. 864, 70 S.Ct. 146. As of the time this opinion is written, it does not appear that Davis has applied for certiorari to the Eighth Circuit. Certiorari was denied in the other two cases. See notes 2 and 4, supra.

8. See Sutherland, "Due Process and Cruel Punishment," 1950, 64 Harvard Law Review 271.

9. United States ex rel. Jackson v. Ruthazer, supra, note 4; see, Bazelon, J., dissenting in Johnson v. Matthews, 1950, 86 U.S.App.D.C. 376, 182 F.2d 677, 684, 685, note 1. Cf., Johnson v. Dye, D.C. W.D.Pa.1950, 94 F.Supp. 133, semble. See, Horowitz and Steinberg, op. cit. supra, note 5, at 457.

10. Middlebrooks did not cap his California adjudications with a petition to the Supreme Court for certiorari, despite the holding of Darr v. Burford, 1950, 339 U. S. 200, 70 S.Ct. 587, 94 L.Ed. 761, that a petition for certiorari is a prerequisite to habeas corpus in the federal district court, except for "extraordinary situations that demand prompt action." Id. 339 U.S. at page 218, 70 S.Ct. at page 597. The lower court found that if Middlebrooks had attempted to petition for certiorari, he would have been removed from California before the petition could have been presented and the case would have been moot. 88 F.Supp. 954. In petitioning the Supreme Court of California, and two Justices of the Supreme Court of the United States, for a stay of rendition pending certiorari proceedings, Middlebrooks did all that was required of him by Darr v. Burford. Cf., United States ex rel. Jackson v. Ruthazer, supra, note 4.

diction to adjudicate the alleged denials to Middlebrooks of constitutional rights, nevertheless "the doctrine of comity * * * teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter." Idem. The contention that the court below was merely passing on the legality of Middlebrooks' detention by the California authorities does not meet the reality that the District Court was in fact adjudicating alleged deprivations of constitutional rights in the criminal prosecution and punishment [11] of the State of Georgia. The underlying principle of the so-called "doctrine of exhaustion of remedies" requires that the courts of Georgia be given the first opportunity to determine the serious questions presented in this case.

The District Court found that "as a practical matter, it is extremely remote" that Middlebrooks could secure adequate relief in the courts of Georgia.[12] On appeal, however, Middlebrooks' counsel have conceded that the Georgia judicial system is entirely adequate, and would be available, to give Middlebrooks any relief to which he is entitled.

█ There is one significant distinction between this case and the line of cases developing the rule of "exhaustion of remedies," from Ex parte Royall, 1886, 117 U.S. 241, 6 S.Ct. 734, 29 L.Ed. 868, through Darr v. Burford, 1950, 339 U.S. 200, 70 S.Ct. 587, 94 L.Ed. 761.[13] In those cases, the appropriate state remedies were immediately available to the prisoners. Middlebrooks, on the other hand, must be subject-

ed to a substantial inconvenience before he can gain access to the Georgia courts, that is, he must first be returned to Georgia. This individual inconvenience, which is not aggravated in this case by an allegation or showing of probable mistreatment en route, or other special circumstances, could not justify the federal court in California in ignoring a rule of comity which the Supreme Court of the United States regards as "crucial to the relationship between the state and federal sovereignties in the exercise of their coordinate power over habeas corpus." [14] 339 U.S. 200, 203, 70 S.Ct. 590.

The order appealed from is reversed.

---

11. In Darr v. Burford, the Supreme Court was dealing only with allegations of unconstitutional conviction, not with allegations of unconstitutional punishment. However, the principle of deference to the sovereign state of Georgia appears equally applicable in this case.

12. 88 F.Supp. 943, 954.

13. See, "The Freedom Writ—The Expanding Use of Federal Habeas Corpus," 1948, 61 Harvard Law Review 657, 664–67.

14. On the contrary, this inconvenience is offset by the inconvenience to the State of Georgia which would result from the need to defend its penal system in the various states of the Union. See, Johnson v. Matthews, 1950, 86 U.S.App.D.C. 376, 182 F.2d 677, 683. Cf., Sutherland, op. cit. supra, note 8, at 277, suggesting that the decision to hear, or refrain from hearing, the prisoner's allegations should turn in each case on a balance of the conveniences, including the factor of availability of persuasive evidence in the asylum state.