Robert TICKLE, Appellant,

v.

L. R. SUMMERS, Sheriff of Pulaski County, Virginia, Appellee.

No. 7968.

United States Court of Appeals
Fourth Circuit.

Argued Sept. 15, 1959.

Decided Oct. 5, 1959.

Before SOBELOFF, Chief Judge, and SOPER and HAYNSWORTH, Circuit Judges.

SOBELOFF, Chief Judge.

The court is called upon by this appeal to examine two orders of the United States District Court for the Western District of Virginia, dismissing a petition and an amended petition for a writ of habeas corpus.

The petitioner, Robert Tickle, is incarcerated in the jail of Pulaski County, Virginia, under a warrant issued by the Governor of Virginia at the request of the Governor of New York in an extradition proceeding. Petitioner's removal to New York is sought in order that he may stand trial upon a charge of violating Section 1293–a of the Penal Law of New York, pertaining to the unlawful use of a motor vehicle without the consent of the owner.

Petitioner contends that the warrant, upon which New York based its request for extradition, is defective in that the supporting affidavit (1) omits an essential element of the offense, that petitioner used the motor vehicle "for his

own profit, use, or purpose * * *", (2) states the value of the motor vehicle too vaguely, and (3) does not show that the affiant had personal information or reasonable ground to believe the facts stated. Therefore, petitioner insists, the Virginia warrant, based on the New York warrant, is also defective and he is entitled to be discharged from the custody of the respondent, the Sheriff of Pulaski County, Virginia.

Furthermore, petitioner alleges that he is not subject to extradition since proceedings involving the same charge were initiated by the New York authorities in 1956 and were abandoned, and that the due process clause of the Fourteenth Amendment prohibits a second extradition proceeding based on this charge.

We find it unnecessary to consider the merits of these contentions because the petitioner has failed to exhaust the remedies available to him in Virginia. In the leading case of Ex parte Hawk, 1944, 321 U.S. 114, 116, 64 S.Ct. 448, 450, 88 L.Ed. 572, the Supreme Court, after tracing the development of the exhaustion doctrine, stated it as follows:

> "Ordinarily an application for habeas corpus by one detained under a state court judgment of conviction for crime will be entertained by a federal court only after all state remedies available, including all appellate remedies in the state courts and in this Court by appeal or writ of certiorari, have been exhausted."

This doctrine has been followed consistently [1] and was embodied in the 1948 recodification of the Judicial Code, 28 U.S.C. § 2254.[2]

---

1. E. g. Stonebreaker v. Smyth, 4 Cir., 1947, 163 F.2d 498, and see cases cited in Darr v. Burford, 1949, 339 U.S. 200, 211, note 32, 70 S.Ct. 587, 94 L.Ed. 761, and annotations in 94 L.Ed. 785 (1949) and 96 L.Ed. 129 (1951).

2. Young v. Ragen, 1948, 337 U.S. 235, 238, 69 S.Ct. 1073, 93 L.Ed. 1333, 28 U.S.C. § 2254 provides:

   "An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

   "An applicant shall not be deemed to have exhausted the remedies available in

Thus, it is clear beyond question that in the ordinary habeas corpus case state remedies must be exhausted before relief may be sought in a federal court. Petitioner asserts, however, that the exhaustion doctrine does not apply where habeas corpus is sought to avoid interstate extradition, and relies on language in an earlier opinion of our own circuit. Day v. Keim, 4 Cir., 1924, 2 F.2d 966. The Third Circuit flatly held in accordance with the contention advanced here. Johnson v. Dye, 3 Cir., 1949, 175 F.2d 250. But the Supreme Court, merely citing Ex parte Hawk, reversed in a brief per curiam opinion. Dye v. Johnson, 338 U.S. 864, 70 S.Ct. 146, 94 L.Ed. 530, rehearing denied 1949, 338 U.S. 896, 70 S.Ct. 238, 94 L.Ed. 551. Since the Supreme Court cited only Ex parte Hawk, a case which bears solely on the exhaustion phase of the Third Circuit's opinion, Dye v. Johnson has been widely interpreted by the Courts of Appeals as requiring the petitioner to exhaust his state remedies as a prerequisite to seeking habeas corpus in a federal court to avoid extradition. United States ex rel. Jackson v. Ruthazer, 2 Cir., 1950, 181 F.2d 588, certiorari denied 1950, 339 U.S. 980, 70 S.Ct. 1027, 94 L.Ed. 1384; Davis v. O'Connell, 8 Cir., 1950, 185 F.2d 513, certiorari denied, 1951, 341 U.S. 941, 71 S.Ct. 995, 95 L.Ed. 1368; Ross v. Middlebrooks, 9 Cir., 1951, 188 F.2d 308, certiorari denied, 1951, 342 U.S. 862, 72 S.Ct. 90, 96 L.Ed. 649; Johnson v. Matthews, 1950, 86 U.S.App. D.C. 376, 182 F.2d 677, certiorari denied 1950, 340 U.S. 828, 71 S.Ct. 65, 95 L.Ed. 608.

The exhaustion doctrine, it has been well said, "is not a dry rule of logic, but a rule of comity." Ross v. Middlebrooks, 9 Cir., 1951, 188 F.2d 308, 310, certiorari denied, 1951, 342 U.S. 862, 72 S.Ct. 90, 96 L.Ed. 649. The dual aspects of the rule of comity are served by requiring exhaustion of state remedies: first, comity between the state and federal governments is enhanced by deferring to the state remedial procedures; second, comity between the state governments themselves is promoted, inasmuch as interstate extradition involves cooperation between the states in the enforcement of their respective criminal laws.[3] Thus, insistence upon exhaustion of state remedies in this area has become an established principle of our jurisprudence, and is looked upon as salutary and essential to the maintenance of harmonious federal-state relations in our system of government.

Next, petitioner alleges that even if he must exhaust his state remedies, he need do so only in the demanding state, New York, and not in the asylum state, Virginia. The case law since the decision of the Supreme Court in Dye v. Johnson, however, is to the contrary, United States ex rel. Jackson v. Ruthazer, supra; Davis v. O'Connell, supra.

In a case strikingly similar to the one now before us, decided earlier than Dye v. Johnson but in harmony with it, the First Circuit expounded the reason for the prevailing doctrine as follows:

"Furthermore, support for our conclusion is found in the reason for the rule which is that 'It is an exceedingly delicate jurisdiction given to the Federal courts by which a person under an indictment in a state court, and subject to its laws, may, by the decision of a single judge of the Federal court, upon a writ of habeas corpus, be taken out of the custody of the officers of the state, and finally discharged therefrom.' Drury v. Lewis, 200 U.S. 1, 7, 26 S.Ct. 229, 231, 50 L.Ed. 343,

---

the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented."

Pending legislation, recommended by the Judicial Conference of the United States, affirms the same principle. H.R. 3216, 86th Congress, 1st session.

3. See Comment, 21 U.Chicago L.Rev. 735 (1954).

cited with approval in Urquhart v. Brown, 205 U.S. 179, 182, 27 S.Ct. 459, 51 L.Ed. 760. It seems to us just as delicate a matter to take one out of the custody of an officer of an asylum state before rendition as to take one out of the custody of an officer of a demanding state after he has been returned there to await trial under an indictment. Federal jurisdiction is just as delicate and interferes just as much with the criminal jurisdiction of the several states in one situation as it does in the other." Lyon v. Harkness, 1 Cir., 1945, 151 F.2d 731, 733.

■ Finally, petitioner insists that this case involves extraordinary circumstances making the exhaustion doctrine inapplicable. His contention stems from the following circumstances. After New York initiated its present extradition effort, the Governor of Virginia scheduled an investigatory hearing for petitioner before Assistant Attorneys General Thomas M. Miller, son of Justice Miller of the Supreme Court of Appeals of Virignia, and Reno S. Harp, III.[4] Petitioner and his counsel refused to attend, on the ground that if extradition should be granted and the petitioner then brought a state habeas corpus action which ultimately reached the Supreme Court of Appeals of Virginia, Justice Miller would have to disqualify himself since his son conducted the hearing for the Governor. The point the petitioner makes is that he would thus be deprived of a review by the full complement of seven justices in that court.

That the exhaustion doctrine may not apply where "special circumstances" exist

is recognized by both the case law and the Judicial Code;[5] but the question to be faced is whether special circumstances are shown to exist here. As to this, the Supreme Court has observed:

"Whether such circumstances exists calls for a factual appraisal by the court in each special situation. Determination of this issue, like others, is largely left to the trial courts subject to appropriate review by the courts of appeal." Frisbie v. Collins, 1951, 342 U.S. 519, 521, 72 S.Ct. 509, 511, 96 L.Ed. 541.

We are of the opinion that the District Judge was correct in finding that the hypothetical situation posed by the petitioner presents no unusual or extraordinary facts or circumstances warranting a departure from the exhaustion rule. Nor is there an absence of available state corrective process, or reason to think that the last mentioned contention, or the others raised by the petitioner, would not be fairly considered.

Declining to avail himself of the proffered hearing before the Assistant Attorneys General designated for that purpose by the Governor of Virginia, and misconceiving his remedy, the petitioner sought instead a writ of habeas corpus in the federal court. In oral argument in this court, the Assistant Attorney General of Virginia stated that he would recommend to the Governor that another opportunity for a hearing be accorded the petitioner notwithstanding his refusal to attend the earlier hearing. Should the result be adverse to petitioner, he may then resort to the state courts as provided by statute[6]—a prerequisite to any relief in a federal court.

---

4. Such a hearing is provided for by the Code of Virginia, § 19–40 (1950)—"Governor may investigate case.—When a demand shall be made upon the Governor by the executive authority of another state for the surrender of a person so charged with, or convicted of, crime, the Governor may call upon the Attorney General or any other officer of this State to investigate or assist in investigating the demand and to report to him the situation and circumstances of the person

so demanded and whether he ought to be surrendered."

5. Frisby v. Collins, 1951, 342 U.S. 519, 521, 72 S.Ct. 509, 96 L.Ed. 541; Darr v. Burford, 1949, 339 U.S. 200, 210, 70 S.Ct. 587, 94 L.Ed. 761; see also cases cited in annotations at 94 L.Ed. 785, 788 (1949), and 96 L.Ed. 129, 132 (1951), 28 U.S.C. § 2254.

6. Code of Virginia, § 19–47 (1950)— "Rights of accused persons; application for writ of habeas corpus.—No person

The District Court was plainly correct in denying the writ of habeas corpus in the existing posture of the case. Our mandate will be stayed for the usual period of 30 days and the petitioner will have his opportunity to pursue the state remedies during this interval.

Affirmed.

arrested upon such warrant shall be delivered over to the agent whom the executive authority demanding him shall have appointed to receive him unless he shall first be taken forthwith before a judge or trial justice in this State, who shall inform him of the demand made for his surrender and of the crime with which he is charged, and that he has the right to demand and procure legal counsel; and if the prisoner or his counsel shall state that he or they desire to test the legality of his arrest, the judge or trial justice shall fix a reasonable time to be allowed him within which to apply for a writ of habeas corpus. When such writ is applied for, notice thereof and of the time and place of hearing thereon shall be given to the attorney for the Commonwealth of the county or city in which the arrest is made and in which the accused is in custody, and to the agent of the demanding state."

The Attorney General expressed the opinion that state judicial review will be available in this case.