Michael Lee **EWING**, Petitioner,

v.

Sheriff **WALDROP**, Sheriff of Gaston County, North Carolina, Respondent.

No. C–C–74–288.

United States District Court, W. D. North Carolina, Charlotte Division.

Feb. 20, 1975.

**510**

Jeffrey M. Guller, Gastonia, N. C., for petitioner.

Richard N. League, Asst. Atty. Gen., North Carolina Dept. of Justice, Raleigh, N. C., for respondent.

## ORDER

McMILLAN, District Judge.

Petitioner Michael Lee Ewing filed an application for writ of habeas corpus on December 17, 1974. Then incarcerated in the Gaston County Jail on a governor's warrant, Ewing claimed that he was entitled to be released because the governor's warrant had no proper basis. A hearing was conducted on January 21, 1975, and on January 28, 1975 it was ordered that Ewing be released on his own recognizance pending determination of the issues.

The chronology of events leading up to the governor's warrant in question is of particular importance and, therefore, will be outlined in some detail.

Born and reared in North Carolina, Ewing lived in Florida from 1954 until 1964, when he moved to Mississippi. He was in prison in Mississippi from 1964 until 1968. In 1968 he was paroled but was returned to prison three months later for public drunkenness and absconding supervision. On September 29, 1970, with approximately two years of his Mississippi sentence left to serve, he was again paroled. A standard certificate of parole and parole conditions was issued in which Ewing agreed, among other things, to "live and remain at liberty without violating the law." Upon release Ewing came to North Carolina where he worked for three months before going to Florida, where he remained until April, 1971.

On September 21, 1971, in the Superior Court of Gaston County, North Carolina, Ewing was convicted of issuing worthless checks, non-felonious breaking and entering, and non-felonious larceny. Mississippi revoked Ewing's parole on the ground that he had been "charged with" these crimes, and on February 22, 1971 a warrant and detainer were issued by Mississippi against Ewing. He received notice of the parole revocation and detainer on February 29, 1971. Both he and his attorney communicated with the Mississippi parole board in unsuccessful efforts to have the detainer dismissed. Petitioner has brought three actions in state court—one in Anson County and two in Gaston County—in an attempt to have the detainer dismissed. All of these actions were unsuccessful.

On August 2, 1974, Ewing was released on a fugitive warrant bond which has since been dissolved. Governor Waller of Mississippi requested on August 9, 1974, that North Carolina Governor Holshouser issue a governor's warrant against Ewing so that he might be extradited to Mississippi. A hearing was conducted in Raleigh on November 12, 1974, on the question whether to honor the request. Ewing received notice of the hearing but was not present. As a result of this hearing, the North Carolina Attorney General's office on November 20, 1974, advised Governor Holshouser to issue a governor's warrant but to hold it in abeyance pending the outcome of a charge against Ewing for driving under the influence of intoxicants. This charge was *nolle prossed* on December 3, 1974, and on that same day the governor's warrant was served

on Ewing and he was incarcerated in the Gaston County Jail. Seeking habeas corpus relief in the Gaston County Superior Court, Ewing was told by the Superior Court judge that the matter could best be handled by a federal court, hence Ewing's application to this court for writ of habeas corpus.

This court's jurisdiction rests on the fact that the issuance of a governor's warrant, although controlled to a great extent by state law, is authorized by 18 U.S.C. § 3182, which seeks to effectuate the Full Faith and Credit Clause of the Constitution.

Notwithstanding the fact that this court has jurisdiction to decide the validity of the governor's warrant, there remains the question whether state remedies must be exhausted before it does so. No such requirement is statutorily imposed. 28 U.S.C. § 2254 mandates exhaustion of state remedies only where there is "custody pursuant to the judgment of a State court," and is, consequently, clearly inapplicable in this instance. Nonetheless, the Fourth Circuit has ruled that comity between state governments as well as comity between state and federal governments requires that the remedies of the asylum state be exhausted before a federal court considers a habeas corpus petition. *Tickle v. Summers*, 270 F.2d 848 (4th Cir. 1959). Judge Sobeloff's opinion in *Tickle* did not, however, foreclose the possibility of by-passing state remedies when "extraordinary circumstances" would render application of the exhaustion doctrine futile. In this instance the state's judicial process was invoked, but the state court chose to defer to the judgment of the federal court. Such action on the part of a state court satisfies the comity consideration. This court sees no viable reason to postpone decision.

As to the merits of the case, North Carolina law provides that upon receiving a request for extradition, the governor may not inquire into the guilt or innocence of the accused. He has, in ef-

fect, no discretion so long as the request for extradition is in "legal form," North Carolina General Statutes § 15–74. Legal form is statutorily defined as a form of demand which alleges that the accused was in the demanding state when the alleged crime was committed and that he thereafter fled the state. These allegations are required to be supported by such accompanying documents as "a statement by the executive authority of the demanding state that the person has escaped from confinement or has broken the terms of his bail, probation or parole," North Carolina General Statutes § 15–57. This supporting information must "substantially charge" the accused with having committed a crime under the law of the demanding state.

In habeas corpus proceedings challenging the validity of detention under a governor's warrant, the court's inquiry should be limited to the question whether the request and supporting documents of the governor of the demanding state "substantially charged" the accused with a crime, or, in cases such as the present one, with violation of the terms of parole. In Ewing's case, no such substantial charge can be found.

One condition of Ewing's September 29, 1970 parole was that he "live and remain at liberty without violating the law," and yet his parole was revoked solely for being "charged with" some North Carolina crimes. In *In re Hubbard*, 201 N.C. 472, 160 S.E. 569 (1931), the North Carolina Supreme Court applied the "substantially charged" test and held that a governor's warrant should not be issued when the demanding state's request and supporting information did not refer to all the key elements of the offense with which the accused had been charged. In Ewing's case the request was defective because it omitted an essential element—a valid reason for the parole revocation. Because Ewing's parole should not, under its own terms, have been revoked for being merely "charged with" a crime,

the governor's warrant should not have been issued.

■ The revocation of the parole was invalid for yet another reason which should have prevented the issuance of the governor's warrant. In *Ex parte Bailey*, 203 N.C. 362, 366, 166 S.E. 165, 166 (1932), *reversed on other grounds, South Carolina v. Bailey*, 289 U.S. 412, 53 S.Ct. 667, 77 L.Ed. 1292 (1933), it was held that the question whether the demanding state had properly charged the commission of a crime should be "determined upon the face of the requisition and the indictment or affidavit accompanying it, *the law of the demanding state, of course, furnishing the test . . .*" (emphasis added). Under the law of Mississippi at the time of Ewing's parole revocation, it was required by statute that "if the prisoner shall have been taken into custody, he shall then be given an opportunity to appeal to the board in writing or in person why his parole should not be revoked." Miss.Code Ann. § 4004–13 (1956), now Miss.Code Ann. § 47–7–27 (1972). Ewing testified that he was given no notice of a hearing on his parole revocation, and that it was a *fait accompli* when he heard about it. The fact that Ewing was given no opportunity to be heard before his parole was revoked makes the revocation invalid under Mississippi law. (The United States Supreme Court in *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), which, subsequent to Ewing's parole revocation, declared a hearing on such revocations to be constitutionally compelled, cited Mississippi as a state which already provided for parole revocation hearings of some kind.) Obligated to apply the law of Mississippi in determining the substantiality of the charge, the Governor of North Carolina should have refused to issue the warrant on both of these grounds.

It is therefore ordered, that the writ of habeas corpus be issued and that petitioner is released from any further duty to respond to the Governor's warrant.