Frank R. WEST, Petitioner,

v.

Theodore JANING, Sheriff, Douglas County, Nebraska, and Richard C. Turner, Attorney General of the State of Iowa, Respondents.

Civ. No. 78-0-180.

United States District Court,
D. Nebraska.

May 2, 1978.

James P. Linn and B. J. Rothbaum, Jr., Oklahoma City, Okl., and David Lathrop, Omaha, Neb., for petitioner.

None appearing for respondents.

## MEMORANDUM

DENNEY, District Judge.

This matter is before the Court upon the petitioner's application for a writ of habeas corpus. Specifically, West alleges that a state district court's denial of bond pending appeal in an extradition case violated his rights under the Eighth and Fourteenth Amendments to the United States Constitution. This Court granted the writ and directed the state district court to hold a bond hearing on the matter. This memorandum is in support of that decision.

### Facts Leading to the Extradition Attempt

On August 12, 1975, a grand jury in the state of Iowa charged Frank R. West and Robert E. Lee with thirty separate acts of obtaining cattle by means of false pretenses and conspiracy to commit false pretenses. Three days later, a fugitive complaint against Mr. West was issued by the District Court for Douglas County, Nebraska. West waived extradition and voluntarily appeared in Iowa to answer to the indictments. On October 11, 1976, a state district court in Iowa held that the indictments failed to allege facts constituting the elements of the offenses of false pretenses and conspiracy to commit false pretenses. *State v. West*, 252 N.W.2d 457, 459 (Iowa 1977). The Iowa Supreme Court reversed this decision and remanded to the state district court on April 20, 1977. *State v. West*, 252 N.W.2d at 462. Trial was set for September 7, 1977. One week before trial was to begin, the State of Iowa moved for dismissal of all of the charges against Mr. Lee and all conspiracy charges against the petitioner. Although the state district court granted this motion, it refused to allow the prosecution an indefinite continuance of the trial date in light of West's demand for a speedy trial. Rather than proceeding with trial, the prosecution chose to file a motion to dismiss the charges against Mr. West without prejudice. The motion was granted, and the State of Iowa subsequently filed new informations against the petitioner for the same offenses. A second attempt was made to extradite West to Iowa.

### Nature of Extradition

Article IV, section two, clause two, of the United States Constitution requires that

A person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime.

This section of the Constitution is not self-executing, but is implemented by 18 U.S.C.A. § 3182 (1969). *Kentucky v. Dennison*, 65 U.S. (24 How.) 66, 16 L.Ed. 717 (1860). The procedure to be followed is fairly straightforward: the governor of the state demanding return of the fugitive gives the governor of the asylum state a certified copy of the indictment. The asylum state governor then exercises his executive authority and causes the fugitive to be arrested. The demanding state is notified, and an agent of that state is then allowed to take the prisoner into custody.

### Extradition of Petitioner

Rather than voluntarily turning himself over to Iowa authorities, the petitioner elected to contest the extradition. Alleging that his constitutional right to a speedy trial had been violated by the State of Iowa, West filed a writ of habeas corpus in Nebraska state court pursuant to Neb.Rev. Stat. § 29–738 (Reissue 1975). Pending its decision on the merits, the state district court considered West's request for bail under Neb.Rev.Stat. § 29–744 (Reissue 1975).

The petitioner was released on his own recognizance. On April 28, 1978, State District Court Judge John E. Clark denied West's motion for habeas relief and directed that he be turned over to Iowa authorities. Upon West's immediate filing of a notice of appeal, Judge Clark stayed the extradition pending review of the decision

by the Nebraska Supreme Court. Judge Clark denied the petitioner bail pending this appeal.

Later during the day of April 28, the petitioner's counsel filed a prayer for the issuance of a writ of habeas corpus in federal district court. The petition dealt solely with the state court's denial of bond and did not contest any of the other actions of Judge Clark. Upon being advised by the Court that West had not yet exhausted all of his potential state remedies, West's lawyers contacted the Honorable Harry Spencer of the Nebraska Supreme Court to ask if he would grant them leave to file an original habeas corpus action in the state supreme court, pursuant to Neb.Rev.Stat. § 24–204 (Reissue 1975), on the denial of bond issue. Justice Spencer indicated that leave would be denied if a formal application was made. An affidavit was filed to that effect, and a request was made to this Court for an immediate ruling on the merits. The Court granted West relief on the basis of the analysis that follows.

*Jurisdiction*

■ A federal court has the power to hear West's claim by virtue of 28 U.S.C.A. § 2241(c) (1971). When the propriety of an extradition itself is challenged, there has been some dispute as to whether § 2241(c)(1) or § 2241(c)(3) applies. *Walden v. Mosley*, 312 F.Supp. 855, 859 n. 2 (N.D. Miss.1970). The question is not without importance, as § 2241(c)(1) does not require exhaustion of state remedies under 28 U.S. C.A. § 2254 (1977), while § 2241(c)(3) mandates the initial reference to state avenues of relief. R. Sokol, Federal Habeas Corpus 45–46 (2d ed. 1969).

The question is not resolved when the focus shifts from the extradition itself to the denial of bond pending appeal of a state court decision to allow extradition. A close inspection of the language of § 2254 shows that federal jurisdiction exists to consider applications for relief from unconstitutional restraints only if the person is "in custody pursuant to the judgment of a State court." On the record before this Court, it seems that West is in custody pursuant to the governor's actions, which are executive in nature. The state court has contributed to his incarceration only by failing to hold a bond hearing. *But cf. United States ex rel. Kripplebauer v. Turley*, 263 F.Supp. 115 (E.D.Pa.1967) (exhaustion required where state statutory remedy exists).

■ While the question is a complex one, its resolution is not an absolute prerequisite to this Court's consideration of West's application on the merits. The petitioner's counsel has ascertained that the filing of an original habeas corpus action in the state supreme court would be fruitless. Under these conditions, the Court holds that West need not perform a useless act to formally comply with any exhaustion question that might exist.

■ Furthermore, the Court believes that special circumstances exist in this case that justify federal intervention at this juncture. Mr. West cannot get relief in state court from the denial of his application for bail pending his appeal on the merits of the decision to allow extradition. Nebraska law allows the clerk of a state district court thirty days to prepare a transcript of the proceedings below for review purposes. Neb.Rev.Stat. § 25–1912 (Reissue 1975). Additional time is then needed for the briefing of issues and oral argument. It is the experience of petitioner's counsel that an appeal to the Nebraska Supreme Court takes several months to complete. If this Court were to stay its hand and refuse to hear the constitutional question, the petitioner would be confined in jail for a protracted period of time simply because he elected to exercise his right to appeal from an adverse state court determination. Furthermore, the issue of unconstitutional restraint would be moot several months hence. Under such time constraints, federal courts are justified in expeditiously entertaining significant federal questions of the sort presented here. *Cf. Boyd v. O'Grady*, 121 F.2d 146, 148–49 (8th Cir. 1941).

Finally, the state courts will not be adversely affected by a determination of the bail issue by this Court. No delay will occur in the process of extradition, as the petitioner will not be turned over to Iowa authorities until his appeal is heard. Therefore, it is appropriate to review the basis for the action of the state court and to consider the constitutional question that arises therefrom.

*Denial of Bail*

Judge Clark apparently did not issue a memorandum of law in support of either his decision to deny the petitioner's application for a writ of habeas corpus or his rejection of West's application for bail pending review. Despite this fact, it is not difficult to ascertain the law of the State of Nebraska on the matter. No Nebraska statute provides for bail of any kind for an individual who challenges extradition proceedings by means of a writ of habeas corpus in state court and seeks appellate review of a denial of the writ. Additionally, the Nebraska Supreme Court has expressly held that the state constitution gives a fugitive from justice no right to bond in this factual context. *Ex parte Campbell*, 147 Neb. 382, 23 N.W.2d 698 (1946).

In drawing a distinction between the right to bail generally and to bail in extradition, the *Campbell* court relied heavily on the following language from *Wright v. Henkel*, 190 U.S. 40, 62, 23 S.Ct. 781, 786, 47 L.Ed. 948 (1903):

> The demanding government, when it has done all that the treaty and the law require it to do, is entitled to the delivery of the accused on the issue of the proper warrant, and the other government is under obligation to make the surrender; an obligation which it might be impossible to fulfill if release on bail were permitted. The enforcement of the bond, if forfeited, would hardly meet the international demand; and the regaining of the custody of the accused obviously would be surrounded with serious embarrassment.

The problem with the reliance on this decision is that it refers to extradition between nations rather than between states. Different policy considerations are present when bail pending extradition of an international fugitive is sought. One federal court has refrained from the allowance of bail in an international setting for fear of running the "grave risk of frustrating the efforts of the executive branch of the government to fulfill treaty obligations." *In re Klein*, 46. F.2d 85 (S.D.N.Y.1930). Bail denial is more appropriate when delicate questions involving possible foreign policy considerations might arise if an international fugitive would jump bond. *See, e. g., Jiminez v. Aristeguieta*, 311 F.2d 547 (5th Cir. 1962), *cert. denied* 373 U.S. 914, 83 S.Ct. 1302, 10 L.Ed.2d 415 (1962).

While none of these considerations are important in the interstate context, state courts have relied on other grounds in denying bail to a fugitive wanted on charges in another state. A number of state supreme courts have held that their respective state constitutions offer bail protection only to those who commit crimes within the asylum state. *State v. Second Judicial District Court*, 86 Nev. 531, 471 P.2d 224 (1970); *Allen v. Wild*, 249 Iowa 255, 86 N.W.2d 839, 842 (1957); *Waller v. Jordan*, 58 Ariz. 169, 118 P.2d 450, 452–53 (1941); *State ex rel. Stringer v. Quigg*, 91 Fla. 197, 107 So. 409, 412 (1926). The deprivation of an opportunity for bond in the asylum state has been further supported by the fact that "the demanding state has all of the facilities to determine the gravity of the offense, the amount of bail, if any, and the conditions thereof." *Buchanan v. State ex rel. Weiss*, 166 So.2d 596, 597 (Fla.App.1964).

These rationales do not seem particularly compelling in the present case. While Nebraska's constitution may not offer the right of bond to a fugitive from an indictment in Iowa, this does not negate the fact that the petitioner has a federal constitutional right to protection against unreasonable deprivation of his liberty. Furthermore, even though Iowa may be better suited to adjust bail in proportion to the crime with which he is charged in that state, it does not necessarily follow that the peti-

tioner should automatically be incarcerated without bond in the asylum state pending his pursuit of a legitimate avenue of appeal made available to him by the laws of the state of Nebraska. The situation seems even more anomalous in light of the fact that both states treat the offense of false pretenses as bailable when the indicted individual is within the charging state.

■ The Court is not suggesting that all interstate fugitives are entitled to be freed on bail pending appeal as a matter of law. Nor is the Court unmindful of the time-honored rule that "bail is not allowed in any case except in pursuance of some statute." *United States v. Curran*, 297 F. 946, 952 (2d Cir. 1924). Rather, the Court holds that a citizen cannot arbitrarily be denied a bail hearing solely because of a lack of statutory authority for release. Modern notions of due process and fundamental fairness militate against such a result.

■ ▪ The Court further holds that West was constitutionally entitled to be considered for bail under the "special circumstances" doctrine of *Wright v. Henkel*, 190 U.S. 40, 23 S.Ct. 781, 47 L.Ed. 948 (1903). Under this doctrine, a judge who receives an application for bail pending appeal of a decision to allow extradition must consider the request in "light of modern concepts of fundamental fairness." *Beaulieu v. Hartigan*, 430 F.Supp. 915, 917 (D.Mass.1977), *reinstating bail after reversal in* 553 F.2d 92 (1st Cir. 1977), *vacated*, 554 F.2d 1 (1st Cir. 1977) (bail pending appeal expires after appellate decision finalized). A refusal to even consider the possibility of bond in the present case is an abuse of discretion considering the inherent power that exists in a judge to consider the propriety of bail.

In *Wright v. Henkel*, the United States Supreme Court was "unwilling to hold that . . . [courts] . . . possess no power in respect of admitting to bail other than as specifically vested by statute, or that, while bail should not ordinarily be granted in cases of foreign extradition, those courts may not in any case, and whatever the special circumstances, extend that relief." *Wright*, 190 U.S. at 63, 23 S.Ct. at 787.

The Nebraska Supreme Court has acknowledged this reluctance to categorically deny the existence of inherent court power to set bail in the absence of statute, but discounted it as dictum. *Ex parte Campbell*, 23 N.W.2d at 699. Subsequent federal decisions have held the *Wright* court's statement in higher regard. In a recent line of international extradition decisions, bail has generally been granted during the completion of pending proceedings despite the lack of statute. *Beaulieu v. Hartigan*, 430 F.Supp. at 917; *Shapiro v. Ferrandina*, 355 F.Supp. 563 (S.D.N.Y.1973), *modified*, 478 F.2d 894 (2d Cir. 1973), *cert. dis.* 414 U.S. 884, 94 S.Ct. 204, 38 L.Ed.2d 133 (1973); *Application of D'Amico*, 185 F.Supp. 925 (S.D.N.Y.1960), *appeal dismissed sub nom.*, *United States v. Bishopp*, 286 F.2d 320 (2d Cir. 1961), *cert. denied sub nom.*, *Farace v. D'Amico*, 366 U.S. 963, 81 S.Ct. 1924, 6 L.Ed.2d 1254 (1961); *Artukovic v. Boyle*, 107 F.Supp. 11 (S.D.Cal.1952), *rev'd on other grounds sub nom.*, *Ivancevic v. Artukovic*, 211 F.2d 565 (9th Cir. 1954), *cert. den.*, 348 U.S. 818, 75 S.Ct. 28, 99 L.Ed. 645 (1954). *See also In re Gannon*, 27 F.2d 362 (E.D.Pa.1928); *In re Mitchell*, 171 F. 289 (S.D.N.Y.1909).

The Court has already pointed out how the international extradition situation demands a stricter scrutiny of the eligibility for bail than the interstate context. The Court can perceive no reason why this stricter standard should be applied to the petitioner in the present case, especially in view of the recent liberalization in bail allowance for international fugitives.

An order granting the writ of habeas corpus has been previously entered.