Francis S. WHELAN, Petitioner,

v.

Dan NOELLE, Respondent.

Civil No. 96–1419–RE.

United States District Court,
D. Oregon.

· Feb. 13, 1997.

Christopher J. Schatz, Assistant Federal Public Defender, Portland, OR, for Petitioner.

David L. Hattrick, Deputy District Attorney, Portland, OR, for Respondent.

## OPINION

REDDEN, District Judge.

Petitioner brings this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241(c)(3). Petitioner contends that he is being unlawfully confined in the Multnomah County Detention Center as a result of defective extradition proceedings originating from the Commonwealth of Puerto Rico. Petitioner challenges both the legality of the extradition proceedings and his continued confinement pending a final determination of the legality of those proceedings.

Respondent contends that the petitioner is not entitled to relief in this court because he has not exhausted his available state remedies, the extradition proceedings are lawful, and petitioner is not entitled to release from confinement pending a determination of legality of the extradition proceedings.

## BACKGROUND

Petitioner was arrested in Multnomah County, Oregon on June 13, 1996 on a fugitive warrant issued by the United States District Court for the District of Puerto Rico. (Petitioner's Memorandum in Support of Habeas Corpus (hereafter "Petitioner's Memo." at 1.) The fugitive warrant was issued on April 9, 1996, on the grounds that a complaint had been filed in that court charging that petitioner did "flee Puerto Rico with intend [sic] to avoid prosecution and custody after committing the crime of illegal deprivation of custody." (Petitioner's Memo., Exh. F.) The fugitive warrant itself was based upon a February 8, 1996, Commonwealth (San Juan) District Court warrant and complaint, which charged petitioner as follows:

"Francis S. Wheelan [sic] Guzman, on or around November 28, 1988, in Rio Piedras, Puerto Rico, within the jurisdiction of the Superior Court of Puerto Rico, San Juan, Part, illegally, voluntarily, knowingly, with malice and criminal intent, without being entitled to do so, deprived Damaris Ramos Nieves (mother of the minor Fadua Idris Wheelan Ramos), who was awarded legitimate custody of said minor child on November 28, 1988, by the Hon. Judge Ronaldo Rodriguez Osorio of the Superior Court

of Bayamon in Civil Case RF–86–4883) [of said child] by removing her from the jurisdiction of the Commonwealth of Puerto Rico.

Said action has continued since November 28, 1988, and the defendant has refused to return the minor child to her mother, in violation of the December 28, 1988, order issued by the Hon. Judge Ronaldo Rodriguez Osorio instructing the defendants to return forthwith the aforementioned child Fadua Idris Wheelan Ramos to her mother." (Petitioner's Memo., Exhs. D, E.)

On June 17, 1996, at petitioner's first appearance in Oregon state court, a Fugitive Complaint was filed pursuant to O.R.S. 133.805, charging petitioner with being a fugitive from justice on the basis of the charge set forth above. (Petitioner's Memo. at 6, Exh. H.) On June 26, 1996, the Governor of the Commonwealth of Puerto Rico issued an extradition request to the Governor of Oregon, seeking petitioner's extradition on the basis that he "was present in this Commonwealth at the time of the commission of" the crime of Unlawful Deprivation of Custody. (Petitioner's Memo, Exh. K.) On July 5, 1996, a Governor's Warrant of Arrest and Extradition was issued by the Governor of the State of Oregon based upon the extradition request from the Puerto Rico. (Petitioner's Memo., Exh. I.) Petitioner was served with the Governor's Warrant on July 19, 1996. (Petitioner's Memo. at 6.)

On July 31, 1996, petitioner filed a petition for writ of habeas corpus in state court contesting his incarceration and extradition from Oregon to Puerto Rico. (Petitioner's Memo., Exh. J.) There, petitioner alleged that his incarceration was unlawful because (1) he is not a fugitive from justice; (2) he did no acts in Oregon or elsewhere so as to occasion the commission of the crimes charged in Puerto Rico, and (3) the Governor's Warrant was defective in that it was not properly supported by an indictment, nor by an information and affidavit(s) as required by O.R.S. 133.753. (Id.) On July 26, 1996, the Multno-

mah County Circuit Court issued an Order to Appear and Show Cause as to why the writ should not be granted. (Petitioner's Memo. at 8.)

On August 12, 1996, the Governor of Puerto Rico issued an "Amended and Supplemental Requisition," charging that petitioner "although not present in this Commonwealth, committed acts intentionally resulting in" the offense of unlawful deprivation of custody, and "may now be found in the State of Oregon." (Petitioner's Memo., Exh. N.) The Amended Requisition relied upon the same documents supplied in support of the original requisition. (Id.) On August 15, 1996, the Governor of the State of Oregon issued an "Amended Governor's Warrant of Arrest and Extradition," which contained essentially the identical language contained in the original Governor's Warrant.[1] (Petitioner's Memo., Exh. M.)

A hearing was held in state court on petitioner's petition for writ of habeas corpus on August 28, 1996. (Petitioner's Memo. at 9.) At that hearing, the Hon. Robert W. Redding found, beyond a reasonable doubt, that petitioner was not a fugitive from the Commonwealth Puerto Rico. (State Court Trial Transcript at 68.) The petition for writ of habeas corpus was denied, however, based on a finding that the Amended Governor's Warrant was supported by due and valid documents of extradition. (Petitioner's Memo., Exh. O.) Extradition was stayed, however, for a period of 30 days to allow petitioner an opportunity to file a notice of appeal, with the stay to continue in effect through the course of appellate proceedings. (Id.)

Petitioner filed a notice of appeal, and the appeal from the denial of his petition for writ of habeas corpus remains pending before the Oregon Court of Appeals. (Petitioner's Memo. at 10.) According to counsel for the petitioner, a decision on the appeal will most likely not be forthcoming until June or July of this year. (Id.)

Although the record is not clear as to the exact timing, apparently at petitioner's origi-

---

1. The only difference in language between the original and amended Governor's Warrant is the reference to Puerto Rico as a "commonwealth" in the amended warrant, whereas it was referred to as a "state" in the original.

nal court appearance on July 17, 1996, bail was set in the amount of $2,000,000. The amount of bail was apparently based upon the $200,000 bail set in the February 8, 1996 Complaint entered by the District Court of the Commonwealth of Puerto Rico.[2] At the conclusion of the hearing on petitioner's state habeas corpus petition, Judge Redding declined to consider a reduction in the amount of bail. (Transcript at 92.)

On or about November 25, 1996, petitioner filed a *pro se* "Motion for Review of Bond" in state court. (Petitioner's Response to Motion to Dismiss, Exh. A.) This motion was denied without hearing on December 3, 1996, by the Hon. William J. Keyes. *Id.* It appears that the motion was not served upon the Multnomah County District Attorney, and no response to the motion was filed.

Petitioner also filed a petition for writ of habeas corpus in original jurisdiction with the Oregon Supreme Court, again acting *pro se.* (Petitioner's Response at 21.) In that petition, petitioner apparently challenged the bail amount of $2,000,000 as excessive. (Petitioner's Response at 21, Exh. B.) Respondent, by and through his attorney, argued that petitioner is not entitled to release pending the appeal from his state habeas corpus denial. (Petitioner's Response, Exh. B.) Respondent also argued that a writ should not issue because petitioner had or has other legal remedies available to seek his release and challenge the security amount, including the petition for writ of habeas corpus pending before this court. (*Id.*) On February 5, 1997, the Oregon Supreme Court denied the petition, without discussion. *See* Order, attached. Petitioner thus remains incarcerated, with bail set at the amount of $2,000,000.

### DISCUSSION

After reviewing the briefing submitted by the parties and after extensive legal research in the area, I conclude that there are four

primary issues in this case: (1) whether this court has jurisdiction to consider this petition; (2) the constitutionality of the Oregon enactment of Sec. 6 of the Uniform Criminal Extradition Act (UCEA), which provides for discretionary extradition of a non-fugitive; (3) the exhaustion of available state remedies (as to both the merits of the petition and the issue of release pending determination on the merits); and (4) the merits of petitioner's claim, i.e., whether the extradition is legal.

### I.  *Jurisdiction.*

■ Under 28 U.S.C. § 2241(c)(3), a petition for writ of habeas corpus may be brought in federal court by one who "is in custody in violation of the Constitution or laws or treaties of the United States." Respondent argues that since the UCEA is not a law or treaty of the United States, custody in violation of the UCEA is not subject to challenge under § 2241. Respondent further argues that no probable cause determination is necessary in the extradition context, and therefore a challenge to custody under the UCEA cannot be based upon a Fourth Amendment argument. In support of this theory, respondent cites Oregon appellate case law concluding that the Fourth Amendment is *not* applicable to extraditions. *Ault v. Purcell,* 16 Or.App. 664, 666, 519 P.2d 1285, *cert. denied* 419 U.S. 858, 95 S.Ct. 106, 42 L.Ed.2d 92 (1974); *Grant v. Shobe,* 18 Or.App. 188, 190, 524 P.2d 550 (1974). Respondent also cites *Michigan v. Doran,* 439 U.S. 282, 292–93, and n. 2, 99 S.Ct. 530, 537, and n. 2, 58 L.Ed.2d 521 (1978), (noting that the question of application of the Fourth Amendment to extraditions was one on which state and federal courts are deeply divided).

■ In response to this argument, petitioner contends that the Fourth Amendment "governs all intrusions by agents of the public upon personal security." *Terry v. Ohio,*

---

2. At the hearing on the state habeas corpus petition, counsel for respondent explained the amount as follows:

"MR. HATTRICK: If I can just clarify, because the commonwealth of Puerto Rico set 200,000 bail on their warrant, and because it apparently was conveyed to us that they would require something actually worth 200,000, then under

this Court's general bail order, which says in fugitive cases the bail is a minimum 50,000, or— or the higher on other state's warrant, I believe we fixed two million, because under our system to get something worth 200,000, you'd have to post, you know, 10 percent would be 200,000." (Transcript at 92.)

392 U.S. 1, 17, n. 13, 88 S.Ct. 1868, 1877, n. 13, 20 L.Ed.2d 889 (1968). Hence, the seizure and detention of individuals for the purposes of extradition, even if extradition is sought under the UCEA rather than the Extradition Clause, must be accompanied by safeguards which represent a reasonable balance between the interest of the individual in freedom and the interests of the states in assisting one another to prosecute criminals.

Petitioner's argument is the better reasoned of the two. The Supreme Court in *Ex parte Royall,* 117 U.S. 241, 249, 6 S.Ct. 734, 739, 29 L.Ed. 868 (1886) stated: "That the petitioner is held under the authority of a State cannot affect the question of the power or jurisdiction of the circuit court to inquire into the cause of his commitment and to discharge him, if he be restrained of liberty in violation of the Constitution." Moreover, in a case which pre-dated the UCEA but which appears nevertheless to remain in effect as good law, Judge Deady of this court stated:

> "The removal of a person from one state, as a fugitive from justice, is a matter of the highest importance, and cannot be made upon less evidence of the party's guilt and flight, than would authorize a warrant and arrest in an ordinary case. And this, both by the constitution of the United States and of [Oregon], is nothing less than information on oath, which gives probable cause to believe that the person demanded has committed a particular crime against the law of the state making the demand, and that he has fled therefrom on that account." *In re Doo Woon,* 18 F. 898, 899 (D.Or.1883).

Finally, as the court noted in passing in *Coungeris v. Sheahan,* 11 F.3d 726, 727 (7th Cir.1994), "the UCEA, where adopted, governs state extradition procedures, *in conjunction with overriding federal law.*" (Emphasis supplied.) Accordingly, I find this court does have jurisdiction over petitioner's claim.

II. *Constitutionality of Sec. 6 of the UCEA (O.R.S.133.767).*

Petitioner contends that O.R.S. 133.767, which provides for discretionary ex-

tradition of a person charged with committing an act in a third state which constitutes a crime in the requesting state, directly conflicts with the Extradition Clause of the United States Constitution, and therefore is unconstitutional. As respondent points out in his motion to dismiss, however, many state and federal courts have considered the constitutionality of non-fugitive extraditions under the UCEA, and virtually all have held that it is, in fact, constitutional.

In *Miller v. Decker,* 411 F.2d 302, 305 (5th Cir.1969), the court expressly held that "[n]either Article IV, Section 2, Clause 2, nor the federal [extradition] statute expressly negate the power of the states to provide for the extradition of persons who are not fugitives in the technical sense." In *Miller,* the court included a discussion of a Ninth Circuit case, *Morgan v. Horrall,* 175 F.2d 404 (9th Cir.), *cert. denied* 338 U.S. 827, 70 S.Ct. 76, 94 L.Ed. 503 (1949), which also addressed this issue, albeit not as directly:

> "Morgan contended in a habeas corpus proceeding that, among other reasons, his extradition from California to Colorado was unlawful because that part of the Uniform Criminal Extradition Act adopted by California allowing his extradition when he was not in the demanding state at the time of his alleged offense was repugnant to Article IV, Section 2, Clause 2 of the United States Constitution and the federal implementing legislation. Morgan had previously sought his release by writ of habeas corpus in the state courts and his constitutional arguments were rejected there. *Ex parte Morgan,* 86 Cal.App.2d 217, 194 P.2d 800 [ (1948) ] (review refused by Supreme Court of California). The Court of Appeals for the Ninth Circuit held that he had made no showing of a violation of his rights under the Constitution to cause the Court to disturb the state courts' interpretation of the meaning and applicability of the California statute. In its full consideration of the federal constitutional issue presented, the California District Court of Appeal had concluded that the state statute applied outside the sphere of the federal statute, was not inconsistent with it or an obstacle to the accomplishment of its purposes, and that the Federal Constitu-

tion and statute neither expressly nor impliedly prohibited the legislation by the state providing for extradition of persons not in the demanding state at the time of the alleged offense." *Miller*, 411 F.2d at 304–05.

Finally, as numerous courts have noted, the Supreme Court gave tacit recognition to the authority of a state to act in an extradition matter beyond the purview of the federal statute in *Innes v. Tobin*, 240 U.S. 127, 36 S.Ct. 290, 60 L.Ed. 562 (1916). Further, in *People of the State of New York v. O'Neill*, 359 U.S. 1, 79 S.Ct. 564, 3 L.Ed.2d 585 (1959) the Supreme Court upheld a similar uniform act entitled the "Uniform Law to Secure the Attendance of Witnesses from Within or Without a State in Criminal Proceedings" in the face of a similar constitutional argument. Accordingly, I find that O.R.S. 133.767, providing for the discretionary extradition of non-fugitives, is a constitutional exercise of the state's powers.

### III. *Exhaustion of State Remedies.*

■ In the ordinary case, exhaustion of state remedies is a prerequisite to seeking habeas corpus in the federal court to avoid extradition. *United States ex rel. Jackson v. Ruthazer*, 181 F.2d 588 (2nd Cir.), *cert. denied*, 339 U.S. 980, 70 S.Ct. 1027, 94 L.Ed. 1384 (1950); *Tickle v. Summers*, 270 F.2d 848 (4th Cir.1959); *United States ex rel. Tucker v. Donovan*, 321 F.2d 114 (2nd Cir. 1963); *Giles v. Merrill*, 322 F.2d 786 (10th Cir.1963). The Supreme Court, after tracing the development of the exhaustion doctrine, stated it in the leading case of *Ex parte Hawk*, 321 U.S. 114, 116–17, 64 S.Ct. 448, 450, 88 L.Ed. 572 (1944) as follows:

"Ordinarily an application for habeas corpus by one detained under a state court judgment of conviction for crime will be entertained by a federal court only after all state remedies available, including all appellate remedies in the state courts and in

this Court by appeal or by writ of certiorari, have been exhausted."

In *United States ex rel. Drury v. Lewis*, 200 U.S. 1, 7, 26 S.Ct. 229, 231, 50 L.Ed. 343 (1906), the Supreme Court had further expounded the reason for the prevailing doctrine as follows:

"It is an exceedingly delicate jurisdiction given to the Federal courts by which a person under an indictment in a state court, and subject to its laws, may, by the decision of a single judge of the Federal court, upon a writ of habeas corpus, be taken out of the custody of the officers of the state, and finally discharged therefrom."

As the Fourth Circuit Court of Appeals stated in the context of a federal court challenge to interstate extradition proceedings before state remedies were exhausted: "[i]t seems to us just as delicate a matter to take one out of the custody of an officer of an asylum state before rendition as to take one out of the custody of an officer of a demanding state after he has been returned there to await trial under an indictment." *Tickle v. Summers*, 270 F.2d at 851.

■ The exhaustion doctrine, however, is not jurisdictional. Rather, it is a rule of comity.[3] *See Fay v. Noia*, 372 U.S. 391, 430–31, 83 S.Ct. 822, 844–45, 9 L.Ed.2d 837 (1963), *overruled on other grounds Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976); *Ross v. Middlebrooks*, 188 F.2d 308, 310 (9th Cir.), *cert. denied* 342 U.S. 862, 72 S.Ct. 90, 96 L.Ed. 649 (1951). As such, upon a showing of "special circumstances," a district court can act in the absence of exhaustion. *Frisbie v. Collins*, 342 U.S. 519, 521, 72 S.Ct. 509, 511, 96 L.Ed. 541 (1952); *Brown v. Fogel*, 387 F.2d 692 (4th Cir.1967), *cert. denied*, 390 U.S. 1045, 88 S.Ct. 1647, 20 L.Ed.2d 307 (1968). Whether special circumstances exist calls for a factual appraisal by the court in each special situation. *Tickle v. Summers*, 270 F.2d at 851 (quoting *Frisbie v. Collins*, 342 U.S. at 521,

---

**3.** In fact, the statutory requirement of exhaustion set forth in 28 U.S.C. § 2254(a) does not apply in this case. The exhaustion requirement set forth in § 2254(a) applies only to habeas corpus proceedings respecting " ... the *judgment* of a state court." (Emphasis supplied.) Jurisdiction in

this case, however, is based on 28 U.S.C. § 2241(c)(3), not § 2254, because petitioner is not being held pursuant to a state "judgment." See *West v. Janing*, 449 F.Supp. 548, 550 (D.Neb. 1978).

72 S.Ct. at 511). In addition, upon a showing that no state corrective processes are available or that state law is settled against examination into any claim made, state remedies are considered exhausted. *United States ex rel. Smith v. Jackson,* 234 F.2d 742, 747 (2nd Cir.1956); *United States ex rel. Tucker v. Donovan, supra.*

The issue of exhaustion in the context of the present case has two facets. The first is whether petitioner should be required to exhaust his available state remedies as to the merits of his claim, i.e., the legality of the extradition proceedings. The second is whether petitioner has exhausted his available state remedies on the issue of release pending the exhaustion of state remedies.

### A. *Exhaustion on the Merits.*

■ Based on the record, there is no question but that petitioner has not yet fully exhausted his available state remedies as to the merits of his claim. In addition, petitioner does not allege that no state corrective processes are available, or that state law is settled against examination into any claim made. Nor does the court find such. Accordingly, with respect to the merits of petitioner's claim, the issue before this court is whether special circumstances exist such that petitioner should be excused from exhausting his available state remedies.

Petitioner argues that special circumstances exist which warrant the consideration of his petition despite the lack of exhaustion. He contends that his continued incarceration on $2,000,000 bond pending the determination of his state court appeal, when viewed in light of the length of time the appeal will most likely take and the length of time that elapsed between the alleged crime and issuance of the original Complaint and Requisition Warrant in Puerto Rico, constitute "inordinate delay" excusing exhaustion. Petitioner also contends that he has raised substantial constitutional claims upon which he has a high probability of success.

In support of his argument, petitioner correctly notes that what constitutes inordinate delay is both a relative question, and a question for decision by this court. *Frisbie v. Collins,* 342 U.S. at 520–21, 72 S.Ct. at 510–11; *Harris v. Champion,* 15 F.3d 1538, 1555 (10th Cir.1994). A review of the facts before this court and the cases pertaining to the issue of exhaustion of remedies in the context of challenging interstate extradition, however, leads me to conclude that special circumstances do not exist here, such that petitioner should be excused from exhausting his state remedies.

Numerous federal courts have refused to find "special circumstances," instead holding that a petition for writ of habeas corpus challenging an interstate extradition would not be heard because the petitioner had not yet exhausted his available remedies in the asylum state.[4] In *Tickle v. Summers, supra,* the Fourth Circuit affirmed the District Court finding that exhaustion would not be excused where the petitioner alleged that he could not receive a fair hearing from the highest Virginia state court. In *Buel v. Decker,* 429 F.2d 1314, 1315 (5th Cir.1970), the court upheld a denial of habeas corpus on exhaustion grounds where the petitioner's state habeas corpus appeal remained pending. Other decisions refusing to excuse exhaustion include: *Ross v. Middlebrooks, supra; Lyon v. Harkness,* 151 F.2d 731 (1st Cir.1945), *cert. denied,* 327 U.S. 782, 66 S.Ct. 682, 90 L.Ed. 1009 (1946); *Davis v. O'Connell,* 185 F.2d 513 (8th Cir.1950), *cert. denied* 341 U.S. 941, 71 S.Ct. 995, 95 L.Ed. 1368 (1951); *Giles v. Merrill, supra; United States ex rel. Kripplebauer v. Turley,* 263 F.Supp. 115 (E.D.Penn.1967); *Ames v. State of Missouri,* 316 F.Supp. 653 (W.D.Mo.1970).

In one reported federal case involving a challenge to interstate extradition in which exhaustion was excused, the court found that where a petitioner's appeal had been dismissed by the highest state court because of his financial inability to file the required briefs in his state habeas corpus proceeding, he had exhausted his state remedies and was entitled to apply to federal court for writ of habeas corpus. *Cohen v. Warden, Montgom-*

---

4. Although the vast majority of these cases have involved extradition of a "fugitive" under the Extradition Clause of the U.S. Constitution, I find no reason why the same principles should not apply to a "non-fugitive" extradition under the UCEA.

*ery County Detention Center,* 252 F.Supp. 666 (D.Md.1966).

In the instant case, following his arrest on the original Governor's Warrant, petitioner filed a petition for writ of habeas corpus in state court. The petition was denied following an evidentiary hearing. Extradition was stayed by the state court for 30 days to provided petitioner time to file an appeal with the Oregon Court of Appeals, with the stay to remain in effect upon the filing of such an appeal and during the pendency thereof.

Petitioner filed a notice of appeal, and his appeal from the denial of the state habeas corpus petition remains pending. According to the Clerk of the Court for the Oregon Court of Appeals, that appeal is currently awaiting the filing of one more transcript. Once that transcript is filed, the parties will have 15 days to "settle" the transcript, and then the briefing schedule will commence. According to an estimate by petitioner's counsel, the appeal will likely not be heard until June or July 1997.

Although it is unfortunate that petitioner's state court appeal may well take several months to conclude, I do not think that this constitutes an "inordinate delay" such that this court should excuse exhaustion and undertake a decision on the merits of petitioner's claim. Petitioner has made no showing that the state appellate process is not sufficient to adjudicate his claims. Accordingly, I hold that petitioner's petition for writ of habeas corpus challenging the legality of the extradition proceedings against him is denied, on the basis that he has not exhausted his available state remedies.[5]

### B. *Exhaustion on Release Pending State Court Determination.*

Notwithstanding my decision to require petitioner to exhaust his available state remedies on the merits before his petition for federal habeas corpus relief will be considered, the separate issue of petitioner's release from custody pending the determination of his state court appeal remains. In addition to seeking review by this court on the merits of his argument, petitioner's submissions to this court can be construed as seeking an order requiring his release from custody pending the determination of his state habeas corpus appeal on the merits.

Again, however, the question of exhaustion arises. Further, even if petitioner has exhausted his available state remedies on this issue, the question remains whether petitioner has a right to such release and whether this court has the power to order a reduction in the security amount set for petitioner's release. Although both issues have been discussed in passing by the parties, because neither party has briefed them in depth, I hereby order that a further hearing on this limited issue is set for February 18, 1996 at 9:15 a.m. The parties should be prepared to discuss the following.

### 1. Exhaustion.

Federal cases considering exhaustion in the context of release agreements are sparse. In *United States ex rel. Kripplebauer v. Turley,* 263 F.Supp. at 116, the petitioner claimed he was being detained under excessive bail in an extradition proceeding. The District Judge refused to consider petitioner's claim on the basis that he had failed to request the appropriate state court(s) to reduce the amount of bail initially set in the action.[6]

In two other cases, however, the courts have excused exhaustion on the issue of bail pending determination of state habeas corpus actions challenging interstate extraditions. In *West v. Janing,* 449 F.Supp. 548 (D.Neb. 1978), the court excused petitioner from exhausting his state remedies contesting the denial of bail pending extradition where peti-

---

5. If petitioner is not successful before the Oregon Court of Appeals, at that time this court could certainly undertake another examination of whether delay would constitute a basis for excusing him from continuing to exhaust his state remedies by seeking review from the Oregon Supreme Court.

6. Moreover, the court refused to consider petitioner's challenge to the underlying extradition on the merits, because petitioner had a pending state court proceeding which had neither been disposed of "nor unreasonably delayed." *Kripplebauer,* 263 F.Supp. at 116–117.

tioner's counsel had determined (and proved satisfactorily to the court) that the pursuing the only remaining state remedy would be fruitless. In *Brown v. Fogel*, 387 F.2d at 694, where the asylum state had acquiesced in the District Court's prior order granting release pending determination of a state habeas corpus petition, the asylum state could not later argue that release should be denied on the basis that petitioner had not exhausted his available state remedies regarding bail.

In the present case, petitioner's bail was originally set at the amount of $2,000,000. In the course of his state habeas corpus proceeding, petitioner sought reduction of this amount, but was denied following an evidentiary hearing by the court. It is not apparent from the record before this court whether petitioner raised the issue of bail amount in his appeal from the denial of state habeas corpus. However, petitioner did subsequently file a *pro se* motion for review of bond with the state court, which was summarily denied. Petitioner also filed a petition for original writ of habeas corpus with the Oregon Supreme Court alleging that the security release amount is excessive, which petition was also summarily denied.

Pursuant to O.R.S. 135.285, "[i]f circumstances concerning the defendant's release change, the court, on its own motion or upon request by the district attorney or defendant, may modify the release agreement or the security release. It appears that petitioner, by his motion for review of bond, has attempted to invoke this statute. That motion, along with the petition for writ of habeas corpus recently denied by the Oregon Supreme Court, appears to constitute the only method by which petitioner could seek reduction of his security amount. Thus, it appears petitioner has exhausted his available state remedies on this issue. However, because the parties have not had the opportunity to brief this issue in detail, I will delay ruling until after further hearing.

2. Right to Release/Security Amount.

Even if petitioner has exhausted his state remedies with respect to the issue of immediate release, the question remains whether he is entitled to such a release, and if so, if this court has the power to order a reduction in the security amount set by the state court.

As a general rule, there is no provision in the Uniform Criminal Extradition Act for bail after a governor's extradition warrant has been issued. The majority of courts have decided that, absent such a statutory authorization, a defendant detained by a governor's warrant has no right to bail. *See, e.g., Deas v. Weinshienk*, 188 Colo. 17, 533 P.2d 496, 497 (1975); *State v. Second Judicial Dist. Court*, 86 Nev. 531, 471 P.2d 224, 225 (1970), *cert. denied*, 401 U.S. 910, 91 S.Ct. 874, 27 L.Ed.2d 809 (1971); *State v. Pritchett*, 12 Wash.App. 673, 530 P.2d 1348, 1349 (1975). These cases, however, are based on the particular state statutes, which differ from the Oregon version of the UCEA pertaining to release.

Under O.R.S. 133.809, unless the offense with which a prisoner is charged is an offense punishable by death or life imprisonment under the laws of the state in which it was committed, "the judge or magistrate must make a release decision concerning the person arrested ... for the appearance of the person at a time specified in the security release or in the release agreement."

In his response to petitioner's motion for immediate release (and in the response to petitioner's unsuccessful petition for habeas corpus before the Oregon Supreme Court), respondent contends that this statute does not afford petitioner a right to release pending determination on the merits of his state court habeas corpus appeal. Respondent argues that since the judgment denying the petition for state habeas corpus is now on appeal, petitioner has no statutory or constitutional right to security release, citing *Priest v. Pearce*, 314 Or. 411, 415, 419, 840 P.2d 65 (1992). (Petitioner's Response to Respondent's Motion to Dismiss, Exh. B.) Respondent further argues that the Oregon Supreme Court case *Carden v. Barnes*, 291 Or. 515, 635 P.2d 341 (1981) *cert. denied* 455 U.S. 921, 102 S.Ct. 1278, 71 L.Ed.2d 462 (1982), which recognizes the right of an extradition defendant to be admitted to bail before and after service of a Governor's Warrant, applies *only* prior to a state habeas

corpus hearing, and does not apply to any appeal thereafter.[7]

Respondent's argument does not appear well taken. First, *Carden v. Barnes*, does not appear to contain any limitation on the release right such as argued by respondent. In fact, the court specifically noted "[d]enying consideration for release to one challenging the validity of arrest under a governor's warrant could, in effect, deny many persons a meaningful right to contest the validity of the governor's warrant." *Carden v. Barnes*, 291 Or. at 525, 635 P.2d at 346. Furthermore, "[a] person accused of a minor offense in the demanding state could be imprisoned in Oregon for a lengthy period of time if he chooses to exercise his right to contest the validity of his arrest." *Id.* (citations omitted). These statements would seem to argue *against* respondent's position, i.e., that release can only be granted pending the state habeas corpus hearing.

The *Priest v. Pearce* case cited by respondent also does not appear to support his argument. *Priest* involved the right to bail pending appeal from a state court *judgment of conviction*, not a state court judgment denying a petition for writ of habeas corpus challenging the legality of extradition. The case, therefore, would appear entirely distinguishable from the situation at hand.

Moreover, there are federal cases holding that a prisoner held on extradition charges is entitled to release pending the determination of the legality of the extradition proceedings, notwithstanding the absence of specific statutory provision therefor. In *West v. Janing*, 449 F.Supp. 548 (D.Neb.1978), the court held that, notwithstanding the lack of statutory authority for bail, petitioner was constitutionally entitled to be considered for bail, and refusal by the state court to even consider the possibility of bond was an abuse of discretion. Accordingly, the court granted habeas corpus relief, ordering the petitioner released on bond pending the state court determination on the merits of his challenge to the extradition.

In *Meechaicum v. Fountain*, 537 F.Supp. 1098 (D.Kan.1982), the District Court held that habeas corpus relief would not be granted, on the basis that there was no federal constitutional right to bail pending determination by a state of the legality of an extradition undertaken pursuant to the Uniform Criminal Extradition Act. That decision, however, was reversed on other grounds, as the Tenth Circuit Court of Appeals stated "[w]e need not decide whether a state may constitutionally deny bail when a detainee is held by the asylum state solely for the purpose of extradition." *Meechaicum v. Fountain*, 696 F.2d 790 (10th Cir.1983).

Here, petitioner has not been outright denied the right to release, as a security release amount of $2,000,000 has been set and remains in effect. Thus, the case is distinguishable from *Carden* in the fact that there the accused was denied even the benefit of a bail hearing. Moreover, petitioner sought reduction of the security release amount in state court on at least three occasions: at the state habeas corpus hearing, in his petition to the Oregon Supreme Court for state habeas corpus relief, and in his motion for review of bond amount. Although all three requests were denied, petitioner cannot argue that he has been denied the opportunity to seek such a reduction. Again, without the benefit of briefing by the parties, I will defer ruling until after further hearing.

## IV. *The Merits of Petitioner's Claim.*

As set forth in Section III above, I find that petitioner must exhaust his available state remedies on his claim that the extradition proceedings are unlawful. Accordingly, I decline to address the merits of this claim at this time.

## *CONCLUSION*

Based on the foregoing, I find the following:

1. This court has jurisdiction to consider this petition for writ of habeas corpus.

---

7. Respondent also questions the soundness of the decision in *Carden*. Despite respondent's opin-

ion, the case nevertheless remains good law.

2. O.R.S. 133.767 is a constitutional exercise of the State of Oregon's powers.

3. Petitioner has failed to exhaust his available state remedies on the merits of his claim that the extradition proceedings are unlawful, and special circumstances which would excuse such exhaustion do not exist.

4. A question remains as to whether petitioner has exhausted his available state remedies on the issue of his immediate release pending determination by the Oregon Court of Appeals on his state habeas petition, whether he is in fact entitled to such release, and, if so, this court's authority to reduce a security amount previously set by the state court. A telephone status conference concerning this limited issue solely shall be held on February 18, 1997 at 9:15 a.m. The court shall commence the telephone call.

5. The court declines to consider the merits of petitioner's challenge to the legality of the extradition proceedings against him in the absence of exhaustion of available state remedies.

IT IS SO ORDERED.